James R. **GOCHNAUER** and Patricia M. Gochnauer, Plaintiffs-Appellants-Cross Appellees,

v.

A.G. **EDWARDS & SONS, INC.,** James Lester, Gene Roach, Defendants-Appellees-Cross Appellants,

John Kerr, Defendant-Appellee.

No. 86–3169.

United States Court of Appeals, Eleventh Circuit.

Feb. 20, 1987.

John C. Lovett, Tallahassee, Fla., for plaintiffs-appellants-cross appellees.

Donald A. Rett, Fred F. Harris, Jr., Roberts, Baggett, LaFace & Richard, Tallahassee, Fla., for defendants-appellees-cross appellants.

Before JOHNSON and ANDERSON, Circuit Judges, and GARZA *, Senior Circuit Judge.

* Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

GARZA, Senior Circuit Judge:

The issue before us is whether a stock-broker can violate his fiduciary obligations under state common law and still fail to violate the anti-fraud provisions of federal securities law or the Florida "blue sky" securities statute. The district court so held, and after review of governing law we affirm the ruling of the court below.

## BACKGROUND

Both parties agree on the findings of fact presented in the district court's order. In April of 1979, plaintiffs/appellants James R. and Patricia M. Gochnauer ("Gochnauers" or "appellants") maintained a securities account with A.G. Edwards & Sons, Inc., a brokerage firm. James Lester was employed as a broker by appellee A.G. Edwards and under the supervision of appellee Gene Roach, branch manager of A.G. Edwards' Ft. Walton Beach office. At that time the Gochnauers' investments were primarily municipal bonds, and since interest rates were high Mr. Gochnauer asked Mr. Lester if other investments could yield more rewarding financial returns. Lester discussed a number of alternative investments with Mr. Gochnauer, including stocks, gold and silver, and option writing. Lester recommended that the Gochnauers consider option writing and consult with John Kerr,[1] a self-styled investment advisor. Lester told Gochnauer that he had known Kerr for a number of years and that Kerr had been successful in the options market. Gochnauer did not meet with Kerr at that time.

Lester made this recommendation of Kerr without investigating Kerr's qualifications, experience, or education. Kerr was not a licensed investment advisor (though Florida law did not require him to be), nor did he have significant financial experience or education in securities trading. Lester's recommendation of Kerr was based on his personal observations of Kerr and discus-sions with customers and Kerr's stockbroker (also employed at A.G. Edwards) about Kerr's investment success. Kerr was not employed by A.G. Edwards. Lester arranged a meeting a few months later between the Gochnauers and Kerr, and Kerr offered to become the Gochnauers' exclusive investment advisor for their account at A.G. Edwards.

As part of this arrangement, Kerr told the Gochnauers that if he were given authority to trade their account he would *guarantee* them a fifteen percent (15%) return on their investment; if the account lost money or failed to earn a 15% return, Kerr promised he would make good the difference. Lester's comment on this proposed arrangement consisted solely of assuring the Gochnauers that Kerr was a successful investor with an account at A.G. Edwards "of over $100,000," and that Kerr had "a fine home." These were factually correct statements at the time.

The Gochnauers had been provided a prospectus concerning the options writing program, which stated on its cover that option writing was a risky venture. The Gochnauers' previous investment instructions on file with Lester and A.G. Edwards directed the brokers to pursue conservative investments for income and growth; by contrast, option writing can only be described as highly speculative. Lester had given the Gochnauers a number of forms to sign in the event they decided to grant Kerr the trading authority for their account. The Gochnauers signed a "Customer's Option Agreement" which stated that the Gochnauers had been furnished with the options prospectus, had read it, and understood the risks and obligations attendant to options trading. The Gochnauers accepted Kerr's offer and signed a contract assuring them a 15% return on their options writing investment program. The contract between Kerr and the Gochnauers stated that there were no other parties to the agreement.[2]

1. Kerr is not a party to this appeal.

2. The terms of the agreement, in its entirety, are as follows:

1. James and Patricia Gochnauer agree to deposit $40,857.47 with the stockbroker of their choice on 17 September 1979. They further agree to authorize John Kerr exclusive

The Gochnauers then liquidated a number of their bonds and, in September, 1979, they placed $36,831 into an exclusive trading account with Kerr, approximately one-half of their life savings.

After substantial losses between September of 1979 and April of 1980, A.G. Edwards inquired of branch manager Roach why an account desiring income and growth was involved in heavy trading and risky option writing. Roach asked Lester, and Lester contacted Kerr and the Gochnauers to consult with them about their investment goals. Lester subsequently changed the instructions on file at A.G. Edwards from "income and growth" to "speculation." The Gochnauers received a financial statement once a month from A.G. Edwards showing the trading activity of their account and the mounting losses.

By the end of the first year the Gochnauers' account had lost approximately $25,000. Rather than demand the 15% return on the contract, the Gochnauers extended the agreement with Kerr for another year. After the two year period, instead of a guaranteed amount of $54,036.00, the balance in the Gochnauers' trading account had fallen to $4,092.18. Over $13,000 in commissions had been paid to Lester and A.G. Edwards due to the high volume of trading that occurred, approximately one-fourth of the losses. Kerr has ratified the obligation owing to the Gochnauers but has

insufficient funds to make good the shortfall of $49,943.82.[3] Lester, Roach, and A.G. Edwards deny any and all responsibility for this financial debacle and steadfastly refuse to compensate the Gochnauers for the funds lost through this venture. Appellees contend that the Gochnauers were experienced investors and that the contract between Kerr and the Gochnauers expressly excluded appellees, thereby absolving them from any liability. The Gochnauers filed suit to recover their losses.

After a bench trial before the court, the district judge came to two important conclusions. First, the court concluded that there was no violation of federal or state securities laws because the Gochnauers had placed no reliance upon Lester's recommendation of Kerr as an investment adviser. Second, the district court found that "Lester breached his fiduciary duty to the Gochnauers when he advised them and assisted them in hiring Kerr and in establishing the speculative option trading account," since "but for the breach of duty, the plaintiffs would not have experienced the heavy losses of approximately $25,000."[4] Both parties challenge these two findings as contradictory; each party urges this court to resolve the contradiction in its favor, thereby providing either total success to appellants or complete vindication for appellees' disclaimer of liability. After studying the

right to enter into transactions for this account for a period of one year.
2. John Kerr agrees to guarantee a net return of 15% on said account. At the end of one year on 16 September 1980, Mr. Kerr agrees to make necessary deposits to bring net value of the account to $46,986.00. Mr. and Mrs. Gochnauer agree to pay Mr. Kerr ½ of all net value of the account that exceeds $46,-986.00 on that date.
3. No other persons or organizations are party to this agreement.
   The third provision of the contract was inserted due to a request from A.G. Edward's main office because of its policy on third-party trading accounts.
3. Apparently Kerr had so much faith in his investment strategies that all of his money was invested in options writing as well. Though Kerr recognizes his contractual obligation to make the Gochnauers' whole, he has no funds to satisfy the debt. Counsel informs us that Kerr

is, at present, employed as a manual laborer in New Mexico.

4. The court awarded damages to the Gochnauers only for the losses incurred during the first year of the contract, $22,026.00. The court concluded that, when the Gochnauers renewed the contract for the second year without first requiring Kerr to satisfy his contractual obligation of providing the 15% guaranteed return, the Gochnauers ratified and renewed the agreement with full knowledge that the contract had not been fulfilled. Consequently, the Court found that the breach of fiduciary duty by appellees went only to the initial contract term of one year. Judgment was also entered against Kerr for the entire loss on the contract, $49,943.82, although Kerr was jointly and severally liable with Lester, Roach and A.G. Edwards for the $22,026.00.

district court order and applicable case law, we decline to disturb the judgment below.

## DISCUSSION

The issue is whether a finding of a breach of fiduciary duty necessitates a finding of statutory securities law violations. It is important to separate the two types of claims raised on appeal. The securities fraud claims are based on Section 10(b) of the Securities Exchange Act of 1934,[5] Rule 10b–5 of the Securities Exchange Commission,[6] and Florida Statute Section 517.301,[7] the state's "blue sky" securities law. The common law breach of fiduciary duty claim is based on Florida common law.

The trial court found for the Gochnauers on the breach of fiduciary duty claim but found for appellees Lester, Roach and A.G. Edwards by holding there was no violation of state of federal securities law. The Gochnauers claim that an investment broker's breach of fiduciary duty necessarily implies a violation of federal and state securities law—that the trial judge made an error as a matter of law in not finding statutory violations. Conversely, the appellees contend the judge's specific conclusion that no securities violation occurred compels the court to find that there was no common law breach of fiduciary duty—that

the trial judge made an error as a matter of law in finding a common law breach.

### A. Securities Law Violations

■ The trial court correctly sets out the elements for a cause of action under federal securities law. A successful cause of action under Section 10(b) or Rule 10b–5 requires that the plaintiff prove (1) a misstatement or omission (2) of a material fact (3) made with scienter (4) upon which the plaintiff relied (5) that proximately caused the plaintiffs' loss. *Huddleston v. Herman & MacLean*, 640 F.2d 534, 543 (5th Cir. Unit A 1981), *modified on other grounds*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). The Florida statutory requirements are identical to Rule 10b–5, *Alna Capital Associates, et al v. Wagner*, 758 F.2d 562, 565 (11th Cir.1985), except that the scienter requirement under Florida law is satisfied by a showing of mere negligence, whereas the minimum showing under Rule 10b–5 is reckless disregard. *Cf. Merrill Lynch, Pierce, Fenner & Smith v. Byrne*, 320 So.2d 436, (Fla. D.C.A. 3d 1975) (negligence satisfies scienter requirements under Florida law) *with Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 201 96 S.Ct. 1375, 1385, 47 L.Ed.2d 668, *reh'g denied*, 425 U.S. 986, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976) (element of scienter "cannot be read

5. Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j) reads, in pertinent part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

....

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

6. The rule was promulgated by the Securities and Exchange Commission in 1942. 17 C.F.R. § 240.10b–5 (1977). The rule states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or

instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or a deceit upon any person in connection with the purchase or sale of any security.

7. § 517.301 provides in pertinent part:

"It is unlawful * * * (b) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; ..."

to impose liability for negligent conduct alone"); *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 44 (2nd Cir.1978) (reckless disregard supports action under Rule 10b–5).

The trial judge found evidence to satisfy the first three elements essential to prove a statutory violation. The information concerning Kerr's qualifications, education, and experience was found to be material, and the record clearly shows Lester failed to investigate Kerr's abilities as an investment advisor and failed to relate vital information relevant to the options writing investment decision to the Gochnauers. The court also found that Lester's conduct was "an extreme departure from the standards of ordinary care," *SEC v. Southwest Coal & Energy Co.*, 624 F.2d 1312, 1321 n. 17 (5th Cir.1980), satisfying the "reckless" scienter requirement of Rule 10b–5. *Id.; Rolf, supra,* 570 F.2d at 44.

■ A showing of plaintiff's reliance on the misrepresented or omitted information is necessary to satisfy the fourth element of a Rule 10b–5 cause of action. This Circuit requires "reasonable reliance" upon the material misrepresentations, a test of subjective reliance tempered by the requirement of "due diligence" on the part of the plaintiff. *Huddleston, supra,* 640 F.2d at 548. Not only must an individual actually rely on the information provided, this reliance must be "justifiable," i.e., with the exercise of reasonable diligence one still could not have discovered the truth behind the fraudulent omission or misrepresentation. *Thompson v. Smith Barney, Harris Upham & Co., Inc.,* 709 F.2d 1413, 1417–18 (11th Cir.1983).

■ After hearing the evidence, the court concluded that the Gochnauers did *not* rely upon the misrepresentations and omissions of Lester with regard to Kerr's

qualifications and experience.[8] Mr. Gochnauer stated at trial that he would have relied on Kerr's advice even if he had known Kerr was not a licensed investment adviser. Apparently, the fact that Mr. Gochnauer, Kerr, and Lester were all former Air Force officers forged a bond of respect and trust between the men. The judge concluded, therefore, that the Gochnauers failed to show that they would have acted differently had they known the truth regarding Kerr's qualifications.

"Thus, it cannot be concluded that had the plaintiffs known of Kerr's lack of qualification, experience, education or investment licensure, that they, the plaintiffs, would have acted differently. Even though the misrepresented and omitted information was material and even though Lester, as a stockbroker, acted recklessly with regard to that information, the plaintiffs have failed to show that they would have acted differently had they known the truth regarding this information. Therefore, the reliance element in this count has not been shown and plaintiffs may not recover against the defendants on their claims under Section 10(b) or under Rule 10b–5 since the plaintiffs must prove each element of this cause of action."

Because reliance is also a necessary element of a Florida "blue sky" securities violation, the court found no state securities violation either. *Zelman v. Cook,* 616 F.Supp. 1121, 1131 (D.C.Fla.1985).

The Gochnauers urge this court to analogize their situation to other cases which "strongly resemble" the one at bar where Rule 10b–5 violations have been found. This plea is unpersuasive for two reasons. First, the cases cited in support of classifying this transaction as a "clear-cut" violation of Rule 10b–5 are readily distinguish-

**8.** Of course, the Supreme Court's decision in *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) held that in some circumstances affirmative proof of reliance is not necessary to state a Rule 10b–5 claim. 406 U.S. at 153–54, 92 S.Ct. at 1472; *see also Rifkin v. Crow,* 574 F.2d 256 (5th Cir.1978). Ultimately, however, "reliance is an issue in *all* Rule 10b–5 cases," *Huddleston, supra,* 640 F.2d at 548 (emphasis by the Court), because the *Affiliated Ute* presumption is rebuttable if a defendant can show that plaintiff *in fact* did not rely on the failure to disclose material information. *Rifkin v. Crow,* 574 F.2d at 262.

able. In the landmark case of *Rolf v. Blyth, Eastman, Dillon & Co., Inc.*, 424 F.Supp. 1021 (S.D.N.Y.1977), *aff'd* 570 F.2d 38 (2nd Cir.) *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978), *amended* 637 F.2d 77 (1980), the court found a Rule 10b–5 violation on much starker facts. The broker was found liable for "gross fraud" because he was responsible for actively supervising the account and the activities of the investment advisor with trading authority. *Id.* at 42. The trial court in *Rolf* found that the broker "undertook a hand-holding operation" to continually assure the client of the investment advisor's competence while the value of the account dropped approximately one million in ten months. *Id.* The facts in this case are sufficiently dissimilar. The broker (Lester) had no supervisory role over Kerr, and Gochnauer never approached Lester for reassurances about the wisdom of Kerr's investment strategy. Lester was excluded from the trading relationship due to the explicit terms of the contract, and he did not actively keep the Gochnauers at bay through numerous misrepresentations while the account lost money. The other cases cited by appellants, *Mauriber v. Shearson American Express, Inc.*, 567 F.Supp. 1231 (S.D.N.Y.1983), and *Rush v. Oppenheimer & Co., Inc.*, 592 F.Supp. 1108 (S.D.N.Y.1984) both dealt only with review of a motion to dismiss, which we find unpersuasive.

Second, the district court heard the statement of Mr. Gochnauer and other evidence presented by the parties. Gochnauer testified that he did not rely on Lester's recommendation of Kerr and the district court credited this statement accordingly. We are not in a position to casually cast aside considered evaluations of evidence introduced at trial. Any findings of fact and reasonable conclusions drawn therefrom must stand unless the reviewing court is left with the definite and firm impression that a mistake has been made. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Underwood v. Hunter*, 730 F.2d 614 (11th Cir.1984), *affirmed*, 471 U.S.

222, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985). The district court's conclusion that no statutory securities violations exist where appellants did not reasonably rely on Lester's material misrepresentations and omissions is supported by the record.

**B. Common Law Fiduciary Obligations**

The lower court did determine that Lester, and through application of *respondeat superior* doctrine appellees Roach and A.G. Edwards, breached a fiduciary duty of care owed to the Gochnauers. Appellees vigorously contest this conclusion. Without statutory-based reliance, the argument runs, there can be no liability to the Gochnauers because there is no breach of fiduciary duty either. Statutory securities fraud and common law breach of fiduciary duty, say appellees, are exactly the same. We disagree.

■ Neither party cited the controlling Supreme Court case on this subject, *Santa Fe Industries v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). The previous term, in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), the Supreme Court held that the terms "manipulative" and "deceptive" in Section 10 of the Securities Exchange Act of 1934 were fashioned from common law concepts of fraud that require scienter, i.e. intentional or knowing misrepresentations or omissions. *Santa Fe* concerned the unanswered but related question whether the term "fraud" in § 10(b) and Rule 10b–5 was coextensive with "all breaches of fiduciary duty in connection with a securities transaction." 430 U.S. at 472, 96 S.Ct. at 1300. The Court answered this question in the negative. Chief among its concerns was a disinclination to "federalize" the fiduciary principles which protect investors under state law. 430 U.S. at 479, 96 S.Ct. at 1304. "Federal courts applying a 'federal fiduciary principle' under Rule 10b–5 could be expected to depart from state fiduciary standards to the extent necessary to ensure uniformity within the federal system." *Id.* The Court was reluctant to "federalize" fiduciary principles in

the securities field "[a]bsent a clear indication of congressional intent." *Id.* Since not every instance of financial unfairness or breach of fiduciary duty will constitute a fraudulent activity under § 10(b) or Rule 10b–5, federal courts should be wary of foreclosing common law breach of fiduciary duty actions which supplement existing federal or state statutes.

The federal securities statutes were modeled after the common law actions of fraud and deceit. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193–215, 96 S.Ct. 1375, 1381–1391, 47 L.Ed.2d 668 (1976) (review of legislative history); *see also Securities Regulation,* 69 Am.Jur.2d § 1 *et seq.* The fiduciary concept derives from trust and agency principles. Actions contrary to the duties of loyalty and care are remedied by giving the beneficiary of the relationship the right to recover for the fiduciary's breach. *See* RESTATEMENT (2d) of Agency §§ 387–398 (1957); Weinrib, *The Fiduciary Obligation,* 25 U. Toronto L.J. 1 (1975); Langevoort, *Fraud and Deception by Securities Professionals,* 61 Tex.L.Rev. 2347, 2348 n. 9 (1983).

Fraud is not the same as breach of fiduciary duty. Florida courts recognize two distinct causes of action for recovery. *See, e.g., Raymond, James & Associates v. Zumstorchen Investment Ltd.,* 488 So.2d 843 (Fla. 2nd DCA 1986) (sufficient statement of facts to support common law claim of fraud; allegations of separate breach of fiduciary duty claim insufficient); *Zelman v. Cook,* 616 F.Supp. 1121 (D.C.Fla.1985) (common law fraud claim distinct from breach of fiduciary duty claim in Florida). Florida courts recognize a breach of fiduciary duty claim at common law.

■ The law is clear that a broker owes a fiduciary duty of care and loyalty to a securities investor. *Thompson v. Smith Barney, Harris Upham & Co., Inc.,* 709 F.2d 1413, 1418 (11th Cir.1983); *Dupuy v.*

*Dupuy,* 551 F.2d 1005, 1015 (5th Cir.1977). *See also* RESTATEMENT (2d) of Agency § 425 (agents employed to make, manage, or advise on investments have fiduciary obligation). In a detailed analysis of numerous cases concerning a broker's fiduciary obligations owed to securities investors, one district court set forth several key factors helpful in analyzing whether a breach of fiduciary duty occurs.[9] *Lieb v. Merrill Lynch, Pierce, Fenner and Smith,* 461 F.Supp. 951 (E.D.Mich.1978). Lester's fiduciary responsibilities in the one-time "non-discretionary" decision to employ Kerr as an investment advisor were:

> (1) the duty to recommend [investments] only after studying it sufficiently to become informed as to its nature, price, and financial prognosis; (2) the duty to perform the customer's orders promptly in a manner best suited to serve the customer's interests; (3) the duty to inform the customer of the risks involved in purchasing or selling a particular security; (4) the duty to refrain from self-dealing ...; (5) the duty not to misrepresent any material fact to the transaction; and (6) the duty to transact business only after receiving approval from the customer.

*Lieb v. Merrill Lynch,* 461 F.Supp. at 953 (citations omitted). The experience and sophistication of the investor are also relevant to determine the extent of the fiduciary duty of care in explaining contemplated securities transactions. *Id.*

■ The trial court found that the Gochnauers were not totally novice investors, but neither were they highly sophisticated. Even though the Gochnauers signed an agreement stating that they understood the risks of option trading, it was incumbent upon Lester to fully explain the risks of options trading and comment on the agreement guaranteeing a 15% return on a speculative investment, a highly unusual ar-

**9.** The court found different duties owing to a securities customer based on whether the account was discretionary or nondiscretionary. The discretionary account is when the broker has a continuous obligation to manage the account; a nondiscretionary account was defined as an account where the customer and broker confer as to a particular transaction but the broker has no continuing management duty over the account once the single transaction is complete.

rangement to say the least. The court concluded:

> "In essence, Lester induced the plaintiffs from switching their sizable investment in corporate bonds, one of the safest investments available, to option trading, one of the most speculative investments available. Lester should have known that such a switch was not one that adequately met the Gochnauers' needs of security and income from their investments. The court finds defendant Lester breached his fiduciary duty to the Gochnauers when he advised them and assisted them in hiring Kerr and in establishing the speculative option trading account. A more studied opinion of the risks of option trading in light of the Gochnauers' then-existing investment objective was owed by Lester to the Gochnauers. This he failed to do, in breach of his fiduciary duty.... But for the breach of duty, the plaintiffs would not have experienced the heavy losses of approximately $25,000."

*Cf.* RESTATEMENT (2D) of Agency, § 425(b) (agents that make investments have fiduciary duty to recommend "prudent" investments considering principal's means and purposes).

■ The common law focuses on the fiduciary's responsibilities as a "prudent man," i.e., whether the fiduciary conducted an independent investigation of the merits of a particular investment. *Lieb v. Merrill Lynch, Pierce, Fenner, & Smith,* 461 F.Supp. 951, 953 (E.D.Mich.1978) (fiduciary obligation of broker includes duty to recommend investment "only after studying it sufficiently to become informed as to its nature, price and financial prognosis"); *Donovan v. Cunningham,* 716 F.2d 1455, 1467 (5th Cir.1983) (ERISA "federalized" common law principle that prudent man rule is expressly focused upon the *conduct* of the fiduciaries). The focus of the inquiry is how the fiduciary acted in his selection of the investment, *Cunningham,* 716 F.2d at 1467, and if the fiduciary did breach his duty to his principal, the question then becomes one of causation. Causation is related to but distinct from reliance. The district court found reliance

and causation when it explained the breach and concluded *"but for* the breach of duty, the plaintiffs would not have experienced the heavy losses of approximately 25,000" (emphasis added). There is substantial evidence to support this determination and we do not find it clearly erroneous. *Accord, Starkenstein v. Merrill Lynch, Pierce, Fenner & Smith,* 572 F.Supp. 189 (D.C.Fla. 1983) (breach of fiduciary duty finding of jury upheld where "account trading was excessive [breach] and caused a serious loss in the value of plaintiff's estate").

Appellees' contention that the district court's finding of insufficient reliance to make out statutory-based securities fraud claims *must* mean that there was no breach of fiduciary duty confuses the issue. As the Supreme Court's decision in *Santa Fe* made clear, the securities fraud statutes do not co-opt the existence of separate claims under state fiduciary principles. The common law of fiduciary obligation is still intact, and appellees' case law arguments based on *fraud* are simply inapposite here. The finding that there was no statutory reliance on Lester's recommendation of Kerr sufficient to make out a claim for securities fraud does not preclude a finding that the Gochnauers relied on Lester's advice to pursue options writing, an unstable and highly speculative investment. Appellees' liability for securities fraud turned on whether the Gochnauers relied on Lester's misrepresentations concerning Kerr's qualifications. Appellees' liability for a breach of fiduciary duty depends upon the extent to which Lester's general advice to invest in options trading caused the Gochnauers to do so—the question of reliance in this instance becomes part of the question of causation. The district court's finding of "but for" causation sufficiently establishes the Gochnauers' reliance upon Lesters' advice to invest in options trading. Because the focus differs for each cause of action, that there is not sufficient reliance for the statutory securities fraud claims does not mean that sufficient reliance *cum* causation may not be found to establish a breach of fiduciary duty.

■ The district court held this breach of fiduciary duty only lasted to the conclu-

sion of the one year contract. Once the Gochnauers extended the contract, they acted independent of Lester's judgment and with full knowledge that Kerr had not made good the guaranteed fifteen percent return. At that point the Gochnauers themselves took responsibility for any further losses. We defer to the district court's decision that the one year contract period was the limit of appellees' liability. Appellees' arguments simply ask us to second guess the district judge and choose another point in time to wrest responsibility for the Gochnauers' losses from them. We decline to do so.

The federal and state securities violations require reliance upon a material misrepresentation or omission. The judge, on the basis of the evidence before him, found none. The judge did conclude that Lester breached his fiduciary duty as a "prudent broker" in advising the Gochnauers to pursue options writing, a finding that is not clearly erroneous. Both decisions are supported by the law and the evidence in this case.

AFFIRMED.