809 So.2d 1 (2001)
AVID ENGINEERING, INC., Appellant,
v.
ORLANDO MARKETPLACE LIMITED, etc., et al., Appellees.
No. 5D01-1528.
District Court of Appeal of Florida, Fifth District.
November 30, 2001.
Rehearing Denied February 7, 2002.
*2 Jeffrey D. Keiner and Kurtis T. Bauerle, of Gray, Harris & Robinson, P.A., Orlando, for Appellant.
David H. Simmons and Julie Hions O'Kane, of Drage, de Beaubien, Knight, Simmons, Mantzaris & Neal, LLP, Orlando, for Appellees.
PLEUS, J.
Avid Engineering Inc. ("Avid") appeals a non-final order denying its motion to compel arbitration. This court has jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv), and section 682.20(1)(a), Florida Statutes (1999). Avid argues that the trial court erred in finding that the arbitration agreement was void for lack of mutuality of obligation. We agree and reverse.
In July 1999, Avid and Orlando Marketplace Limited Partnership ("Orlando Marketplace") executed a written contract for Avid to provide engineering services for an expansion of retail space at the Dr. Phillips Marketplace shopping center. That contract contained an arbitration provision which stated, in pertinent part:
All claims, counterclaims, disputes, and other matters in question between the Client and the Engineer arising out of this Agreement or the breach thereof shall be decided by binding arbitration in accordance with the Construction Industry Rules of the American Arbitration Association then obtaining, at the sole discretion of the Engineer.
(Emphasis added).
In June 2000, Avid and Orlando Marketplace entered into a separate contract in which Orlando Marketplace agreed to lease Avid part of the additional retail space it was developing. In September 2000, Orlando Marketplace notified Avid that it was abandoning its proposed expansion and terminating the lease. Avid rejected Orlando Marketplace's attempt to terminate the lease.
In January 2001, Orlando Marketplace filed an amended complaint against Avid, alleging three counts: (1) professional negligence, (2) breach of the engineering contract, and (3) declaratory relief regarding the lease. Avid responded to the amended complaint by moving to compel arbitration on counts one and two, moving to dismiss count three, and filing a counterclaim for breach of the lease.
At the hearing on Avid's motion to compel arbitration, Orlando Marketplace argued that Avid waived its right to arbitration by filing a counterclaim and that the arbitration agreement was void for lack of *3 mutuality of obligation. The trial court agreed that Avid had not waived its right to arbitrate but found that the arbitration agreement was unenforceable for lack of mutuality of obligation. Accordingly, the trial court denied Avid's motion to compel arbitration. Avid timely appealed.
This court reviews de novo a trial court's ruling on a motion to compel arbitration. See Florida Title Loans, Inc. v. Christie, 770 So.2d 750, 751 (Fla. 1st DCA 2000). In Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999), the Florida Supreme Court stated:
Under both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived. See Terminix Int'l Co. L.P. v. Ponzio, 693 So.2d 104, 106 (Fla. 5th DCA 1997).
Agreements to arbitrate are generally favored by the courts, but the jurisdiction of the courts cannot be invoked to compel arbitration unless an agreement to arbitrate complies with the Florida Arbitration Code. Knight v. H.S. Equities, Inc., 280 So.2d 456, 459 (Fla. 4th DCA 1973). Orlando Marketplace argues that the arbitration provision fails to comply with section 682.02, Florida Statutes (1999), because both parties did not agree to arbitrate. We disagree.
Section 682.02, Florida Statutes, states in pertinent part:
Two or more parties may agree in writing to submit to arbitration any controversy existing between them at the time of the agreement, or they may include in a written contract a provision for the settlement by arbitration of any controversy thereafter arising between them relating to such contract or the failure or refusal to perform the whole or any part thereof.
No Florida cases have addressed the issue of whether this statute requires mutuality of obligation. However, a reasonable interpretation of the statute is that it allows two or more parties to arbitrate "any controversy," including those controversies in which only one party has the right to arbitrate. Therefore, we conclude that the statute does not specifically prohibit the arbitration agreement in this case.
Orlando Marketplace also relies on this court's opinion in R.W. Roberts Construction. Co. v. St. Johns River Water Management District, 423 So.2d 630 (Fla. 5th DCA 1982), to support its argument that the arbitration agreement is void for lack of mutuality. In R.W. Roberts, a subcontractor sued a general contractor for money due. The general contractor moved to compel arbitration under the following provision in the subcontract:
All claims by Subcontractor against General Contractor or (sic) whatever nature which involve this subcontract or the project shall be submitted to arbitration in the same manner as provided in the General Contract unless those provisions should prove invalid for arbitration in which event the arbitration provisions of the Florida Statutes shall prevail.
The trial court denied the motion to compel, holding that the arbitration clause lacked mutuality because it required arbitration of all claims of the subcontractor against the general contractor, but not those of the general contractor against the subcontractor. The contractor petitioned this court for a writ of certiorari,[1] asserting *4 that the trial court's decision departed from the essential requirements of law, because it interpreted the arbitration provision as lacking in mutuality of obligation, rather than lacking only mutuality of remedy.[2] This court disagreed and denied the petition. It its analysis, this court found the arbitration provision ambiguous, in that it could be construed as lacking in mutuality of obligation or lacking in mutuality of remedy. We held that the trial court did not depart from the essential requirements of law in finding that the arbitration clause was void for lack of mutuality, because it was a separate part of the contract requiring its own consideration or mutual obligation. Id. at 633.
In Rohlfing v. Tomorrow Realty & Auction Co., 528 So.2d 463 (Fla. 5th DCA 1988), we revisited our prior decision in R.W. Roberts. We concluded that the defense of mutuality of obligation was nothing more than a "smoke screen." Additionally, we agreed with LaBonte Precision, Inc. v. LPI Industries Corporation, 507 So.2d 1202 (Fla. 4th DCA 1987), which held that:
[W]here there is no other consideration for a contract, mutual provisions must be binding on both parties, but where there is any other consideration for the contract, "mutuality of obligation" is not essential. Id. at 1203 (citing Wright & Seaton, Inc. v. Prescott, 420 So.2d 623, 626 (Fla. 4th DCA 1982)).
Id. at 466. By agreeing with LaBonte, we implicitly overruled that portion of R.W. Roberts that cited approvingly the New York case of Arcata Graphics Corp. v. Silin, 59 A.D.2d 1007, 399 N.Y.S.2d 738 (1977), which held an arbitration provision void for lack of mutuality of obligation. We also note that Arcata has been abrogated by Sablosky v. Edward S. Gordon Co., 73 N.Y.2d 133, 538 N.Y.S.2d 513, 535 N.E.2d 643 (1989), which held that "[i]f there is consideration for the entire agreement that is sufficient, the consideration supports the arbitration option, as it does every other obligation in the agreement."
In the instant case, there was consideration for the engineering agreement. Specifically, Avid agreed to perform engineering services in exchange for money. Because there was sufficient consideration to support the entire contract, the arbitration provision was not void for lack of mutuality of obligation. See LaBonte, 507 So.2d at 1202.
The better analytical approach is to consider whether the arbitration provision is unconscionable. In Powertel, Inc. v. Bexley, 743 So.2d 570 (Fla. 1st DCA 1999), the first district court explained unconscionability as follows:
Florida courts may properly decline to enforce a contract on the ground that it is unconscionable. See Steinhardt v. Rudolph, 422 So.2d 884 (Fla. 3d DCA 1982). To support a determination of unconscionability, however, the court must find that the contract is both procedurally unconscionable and substantively unconscionable. See Belcher v. Kier, 558 So.2d 1039 (Fla. 2d DCA 1990); Complete Interiors v. Behan, 558 So.2d 48 (Fla. 5th DCA 1990). The procedural component of unconscionability relates to the manner in which the contract was entered and it involves consideration of such issues as the relative *5 bargaining power of the parties and their ability to know and understand the disputed contract terms. For example, the court might find that a contract is procedurally unconscionable if important terms were "hidden in a maze of fine print and minimized by deceptive sales practices." Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C.Cir.1965). In contrast, the substantive component focuses on the agreement itself. As the court explained in Kohl v. Bay Colony Club Condominium, Inc., 398 So.2d 865, 868 (Fla. 4th DCA 1981), a case is made out for substantive unconscionability by showing that "the terms of the contract are unreasonable and unfair."
Id. at 574. Admittedly, the wording of the arbitration clause in Powertel was not onesided or discretionary; it applied to "any unresolved dispute, controversy or claim...." However, the court's unconscionability analysis lends itself equally well to unilateral or discretionary arbitration clauses. Such an analysis provides a more reasoned and flexible framework for determining the enforceability of arbitration provisions.
In the instant case, the arbitration provision was negotiated at arms length by relatively sophisticated parties with relatively equal bargaining power and understanding of the contract language. In fact, there was evidence that the parties negotiated and modified many of the terms of the contract. This was not an adhesion contract. Therefore, it was not procedurally unconscionable. Substantively, the agreement does not require Orlando Marketplace to surrender any of its claims or damages that it could seek in court. It merely substitutes the forum for deciding those claims and damages. Thus, it is not substantively unconscionable.
We next address the issue of whether Avid waived its right to arbitrate. Because the trial court ruled that the arbitration agreement was invalid, it did not rule on the issue of whether Avid waived its right to arbitrate. However, the court made it clear after hearing argument that it believed Avid did not waive its right to arbitrate. We agree.
It is well-established that a party may waive its right to arbitration by "taking an active part in the litigation or by undertaking an action inconsistent with that right." See, e.g., Coral 97 Associates, Ltd. v. Chino Elec., Inc., 501 So.2d 69, 70 (Fla. 3d DCA 1987). However, Orlando Marketplace incorrectly asserts that the mere filing of a counterclaim is sufficient to trigger a waiver. In Concrete Design Structures, Inc. v. P.L. Dodge Foundation, Inc., 532 So.2d 1334 (Fla. 3d DCA 1988), the district court held that filing a counterclaim and motion to dismiss the complaint at the same time a motion to compel arbitration is filed, without more, does not waive right to arbitration. They also distinguished the Coral 97 Associates case, noting that the triggering event in that case was not the filing of a counterclaim, but the act of implementing discovery. Id.
In the instant case, Orlando Marketplace filed an amended complaint alleging two counts under the engineering contract containing the arbitration clause, and one count for breach of the lease, which did not contain an arbitration clause. Avid responded by filing a motion to compel arbitration on the first two counts, a motion to dismiss count three, and a counterclaim to count three. Avid has not taken an active part in litigation or other action contrary to its right to arbitrate the first two claims, because its first response was to file a motion to compel arbitration.
Thus, Orlando Marketplace's argument that Avid's counterclaim on an issue inextricably intertwined with other arbitrable *6 issues was sufficient to waive its right to arbitrate all issues, is both irrelevant and incorrect. It is irrelevant because the mere filing of the counterclaim was not sufficient to trigger waiver. It is incorrect because even if it was sufficient to trigger a waiver, that waiver would only apply to the count for breach of the lease. Accordingly, Avid did not waive its right to arbitrate the first two counts.
We reverse and remand with directions to order arbitration on the first two counts. If the trial court finds that the remaining claims involving the lease are "inextricably intertwined" with the arbitrable claims, it should stay all judicial proceedings pending resolution of the claims in arbitration. See Sabates v. International Medical Centers, Inc., 450 So.2d 514 (Fla. 3d DCA 1984) (if resolution of the arbitrable claims obviates need for further litigation of claims pending in court, then court claims should be stayed).
REVERSED AND REMANDED WITH DIRECTIONS.
COBB, J., concurs.
GRIFFIN, J., dissents, without opinion.
NOTES
[1] At the time of R.W. Roberts, certiorari was the correct procedure for challenging a trial court's ruling on a motion to compel arbitration. Now a party has the right to appeal under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv), and section 682.20(1)(a), Florida Statutes.
[2] Mutuality of obligation pertains to consideration; mutuality of remedy pertains to the means of enforcing the contract. Bacon v. Karr, 139 So.2d 166 (Fla. 2d DCA 1962).