925 So.2d 1112 (2006)
EPISCOPAL DIOCESE OF CENTRAL FLORIDA, Appellant,
v.
PRUDENTIAL SECURITIES, INC., etc., et al., Appellees.
No. 5D05-248.
District Court of Appeal of Florida, Fifth District.
April 7, 2006.
*1113 Robert Dyer and Brian R. Gilchrist of Allen, Dyer, Doppelt, Milbrath & Gilchrist, Orlando, for Appellant.
Ronald E. Crescenzo, Patricia M. Christiansen, Richard L. Martens and Charles L. Pickett of Boose Casey Ciklin Lubitz Martens McBane & O'Connell, West Palm Beach, for Appellee.

ON MOTION FOR REHEARING AND FOR REHEARING EN BANC AND MOTION FOR CLARIFICATION
PER CURIAM.
We deny appellees' motion for rehearing and for rehearing en banc but grant the appellees' motion for clarification. Accordingly, we withdraw our prior opinion and substitute the following opinion.
The Episcopal Diocese of Central Florida ("Diocese") appeals a trial court order confirming an arbitration award and entering final judgment. The Diocese claims that the trial court erred in ordering this case to arbitration. We agree.
In 1992, Prudential Securities ("Prudential") hired John Trumbo ("Trumbo") as a broker after he was fired by another brokerage firm for mismanaging client funds. In May 1999, the Diocese established four investment accounts with Prudential, with Trumbo serving as broker on each account. The Diocese signed an application, a "Command Account Agreement," and a "Client's Opening Cash Agreement" for each account.
The Command Account Agreement contained the following arbitration provision:
I agree that all controversies which may arise between us concerning any transaction (whether executed or to be executed within or outside of the United States), my account or this or any other agreement between us, whether entered into prior, on, or subsequent to the date indicated on the signature page, shall be determined by arbitration.
The Cash Agreement contained the following arbitration provision:
Cash Agreement
The undersigned agrees, and by carrying an account for the undersigned you agree, all controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.
The Diocese later received a welcome letter from Prudential that listed the Diocese's primary investment objective as "Income" and its risk tolerance as "Conservative."
Trumbo managed the accounts until he was "permitted to resign" from Prudential on July 21, 2000. Prudential was required to file a termination notice[1] regarding *1114 Trumbo and it did so, listing the reason as a "loss of confidence regarding business practices." Later Prudential reported that Trumbo had been discharged after Prudential determined that his investment philosophy "was not consistent with the investment philosophy espoused by the firm."
Sometime in late August or early September 2000, Trumbo informed the Diocese that he was changing brokerage firms and obtained consent to move all four of its accounts to his new firm, Continental Broker Dealer, Inc., ("Continental"). Prudential sent a letter to the Diocese acknowledging the transfer of the funds to Continental, but the letter did not allege any improprieties or indicate that Trumbo had been fired. The transfer of funds was completed on or about October 2, 2000. Over the next year the funds lost a combined $775,113 in value.
The Diocese then filed a tort action against Prudential seeking to recover damages for its investment losses at Continental. The Diocese alleged that Prudential failed to warn the Diocese, before transferring its accounts to Continental, that Trumbo's trading at Prudential was inconsistent with the Diocese's investment objectives and that Trumbo had a significant regulatory history. In essence, the Diocese asserted that but for Prudential's breach of fiduciary duty, the Diocese never would have allowed Trumbo to manage the funds or transfer the funds to Continental and would not have suffered losses.
Prudential filed a motion to compel arbitration which was granted by the trial court. The Diocese filed an untimely notice of appeal of that order but it was dismissed sua sponte by this court for lack of jurisdiction.[2] Following a five-day arbitration hearing, the panel entered an amended award dismissing or denying each claim raised by the Diocese.
The Diocese then filed another complaint, challenging the jurisdiction of the arbitration panel and seeking to vacate the amended award. The new complaint sought to reinstate the original complaint on the ground that the Prudential contracts did not require arbitration on the issue of the Diocese's damages caused by Trumbo while he was with Continental.
The Diocese moved for judgment on the pleadings. Prudential answered and moved to confirm the amended arbitration award and for an order of expungement. The trial court denied the Diocese's motion to reinstate and entered its Order Confirming Arbitration Award, Entry of Final Judgment in Conformity Therewith, and Order of Expungement. The Diocese filed this appeal.
Absent one of the statutory grounds for vacating an arbitration award, neither a trial court nor an intermediate appellate court may overturn an arbitration award. See, e.g., Schnurmacher Holding v. Noriega, 542 So.2d 1327 (Fla. 1989); § 682.13, Fla. Stat. (2005). A court *1115 must consider three elements in considering a motion to compel arbitration: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitration was waived. See, e.g., Qubty v. Nagda, 817 So.2d 952 (Fla. 5th DCA 2002).
The issue here relates to the first prongwhether the written agreements between Prudential and the Diocese require the Diocese's claim for damages to be arbitrated. Whether an arbitration clause requires arbitration of a particular dispute is determined by the intent of the parties, which is discerned from the language used in their agreement. See, e.g., Citigroup, Inc. v. Amodio, 894 So.2d 296 (Fla. 4th DCA 2005), rev. den., 911 So.2d 792 (Fla.2005), relying upon Seifert v. U.S. Home Corporation, 750 So.2d 633 (Fla. 1999).
Like the situation in Amodio, this is not a case in which the federal policy favoring arbitration agreements drives our decision. Federal law favors arbitration only as to issues the parties have actually agreed to arbitrate. Amodio, 894 So.2d at 298, citing Volt Info. Scis. Inc. v. Stanford Junior Univ., 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (Federal Arbitration Act does not confer right to compel arbitration of any dispute at any time; Act confers only right to obtain order directing arbitration proceeding in manner provided for by parties' agreement). Also under federal law, the language of the agreement defines the scope of the arbitration agreement. EEOC v. Waffle House Inc., 534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (absent an ambiguity in the agreement, it is the language of the contract that defines the scope of disputes subject to arbitration pursuant to the Federal Arbitration Act).
Turning to the language in the agreements, the Diocese agreed to submit disputes involving any "transaction," "my account," or the "construction, performance or breach of this or any other agreement between us." The Diocese has conceded that any losses it may have suffered while its accounts were at Prudential would be arbitrable under these terms. However, the Diocese is not suing for those losses rather it seeks damages for its investment losses at Continental based on a breach of fiduciary duty tort claim.
In Seifert, the Florida Supreme Court held that an agreement to arbitrate in a contract between the parties does not necessarily mandate arbitration of a subsequent and independent tort action based upon common law duties. In that case, the plaintiff's husband died when their home's air-conditioning system circulated carbon monoxide emissions from their car left running in the garage. The plaintiff then filed a wrongful death action against the homebuilder U.S. Home Corporation. U.S. Home moved to compel arbitration based on a provision in the parties' contract for sale and purchase which required arbitration of "Any controversy or claim arising under or related to this Agreement or to the Property."
In determining whether the tort claim came within the contract's arbitration clause, the court held that the appropriate test was whether "the tort claim, as alleged in the complaint, arises from and bears such a significant relationship to the contract between the parties as to mandate application of the arbitration clause." Seifert, 750 So.2d at 640. To aid in this determination, the court examined the contract containing the arbitration clause and the allegations of the complaint to see if there existed a "sufficient nexus" between the two.
After doing so, the court concluded the tort claim in that case did not have a sufficient relationship to the agreement so *1116 as to require submission of the cause to arbitration:
While it is certainly true that this dispute would not have arisen but for the sales agreement between U.S. Home and the Seiferts, we conclude that the mere existence of such contract is not sufficient to compel that this dispute be arbitrated. See Armada [Coal Export, Inc. v. Interbulk, Ltd., 726 F.2d 1566 (11th Cir.1984)]; Hersman [Inc. v. Fleming Companies Inc., 19 F.Supp.2d 1282 (M.D.Ala.1998)]. None of the allegations assert that U.S. Home's duties or obligations arose from or were governed by the contract. See Necchi [S.p.A. v. Necchi Sewing Mach. Sales Corp.], 348 F.2d [693] at 696. Even under a broad approach, the dispute does not create a "significant relationship" to the contract because none of the allegations in the complaint refer to or mention the sales agreement between the Seiferts and U.S. Home. Accordingly, we are unable to conclude that the tort action dispute in this case bears a significant relationship to the contract or that the parties in contracting necessarily contemplated the existence and arbitration of future tort claims for personal injuries based on a party's common law negligence.
750 So.2d at 642.
Similarly, the mere existence of the agreements to arbitrate in the present case is not sufficient to compel this dispute to arbitration. The cause of action alleged by the Diocese, damages for failing to warn the Diocese of Trumbo's history of mismanagement and reason for termination from employment, is a tort action for breach of fiduciary duty. The fiduciary concept derives from trust and agency principles. Actions contrary to the duties of loyalty and care are remedied by giving the beneficiary of the relationship the right to recover for the fiduciary's breach. Gochnauer v. A.G. Edwards & Sons, Inc., 810 F.2d 1042 (11th Cir.1987).
Florida courts have long recognized a breach of fiduciary duty claim at common law. Gochnauer. Thus the agreements in this case did not place the parties in a "unique relationship" that created new duties not otherwise imposed by law. See Seifert. See also Amodio (arbitration provision in contract between investor and financial services company, which covered claims "concerning any order or transaction, or the construction, performance or breach" of the contract, did not require arbitration of investor's claims for fraud, negligent misrepresentation, and securities violations arising out of analyst's advice that investor not sell certain stock; investor's claims did not arise out of a transaction or order, and investor alleged breaches of duties owed to the general public, rather than duties arising from the contract).
As was the case in Seifert, the factual allegations in the Diocese's complaint do not rely on the agreements between the Diocese and Prudential, and the resolution of this dispute is not dependent upon the construction of those agreements. Indeed, the damages suffered by the Diocese occurred after the contracts with Prudential were terminated and after the accounts were transferred. See Miller v. Roberts, 682 So.2d 691 (Fla. 5th DCA 1996) (arbitration provisions of employment agreement, shareholder restriction agreement and stock purchase agreement involving three physicians practicing together which required arbitration "with respect to the terms of the Agreement," did not compel arbitration of tort claims alleging breach of fiduciary duty, fraud and conspiracy).
In reaching our conclusion, we are mindful of Hirshenson v. Spaccio, 800 So.2d 670 (Fla. 5th DCA 2001) but find that case distinguishable. In Hirshenson, the plaintiff *1117 sued her investment counselor and broker for fraud, negligent misrepresentation, breach of fiduciary duty, negligence, and securities violations after she lost her entire investment. This court concluded the dispute by the investor involved the suitability of the investments, an issue clearly related to the contract. In addition, the arbitration clause in that case[3] was extremely broad and even covered the "conduct" of the parties.
In contrast, the arbitration provisions in this case are much narrower. They do not show that parties contemplated arbitration of a tort claim for breach of fiduciary duty. Accordingly we reverse the trial court's order compelling arbitration, and order confirming arbitration award for damages arising after the Diocese's accounts were transferred,[4] and remand this case for further proceedings.
REVERSED and REMANDED for further proceedings.
PLEUS, C.J., SHARP, W., J., and SEMENTO, L.J., Associate Judge, concur.
NOTES
[1] Section 517.12(b), Florida Statutes, provides:

Registration of dealers, associated persons, investment advisers, and branch offices
(12)(b) Every dealer, investment adviser, or federal covered adviser shall promptly file with the department, as prescribed by rules adopted by the department, notice as to the termination of employment of any associated person registered for such dealer or investment adviser in this state and shall also furnish the reason or reasons for such termination.
[2] A non-final order compelling arbitration may be appealed. See, e.g., Tropical Ford, Inc. v. Major, 882 So.2d 476, 478 (Fla. 5th DCA 2004); Fla. R.App. Proc. 9.130(a)(3)(C)(iv). Notwithstanding, having failed to take a non-final appeal, the appellant is permitted to pursue a final appeal after arbitration is completed. See, e.g., Lidsky Vaccaro & Montes, P.A. v. Morejon, 813 So.2d 146 (Fla. 3d DCA), rev. denied, 835 So.2d 268 (Fla.2002); Investors Associates, Inc. v. Moss, 441 So.2d 1144 (Fla. 3d DCA 1983); Saul v. Basse, 399 So.2d 130 (Fla. 2d DCA 1981).
[3] "Any and all controversies arising out of or relating to this agreement or the conduct of the parties hereto which can be lawfully submitted to arbitration, should be submitted to arbitration.... This clause binds the undersigned to submit to arbitration all claims including those which could otherwise be brought in a judicial forum and those which could be joined to other non-arbitrable claims."
[4] We interpret the Diocese's complaint as seeking damages only for those losses it suffered after its accounts were transferred from Prudential to Continental. Our opinion is not intended to affect the decision of the arbitrators on other matters (e.g., any losses suffered by the Diocese while its accounts were at Prudential) if, for some reason not clear from this record, those matters were also submitted to arbitration.