970 So.2d 895 (2007)
The STERITECH GROUP, INC., Appellant,
v.
Cassandra E. MacKENZIE, Appellee.
No. 5D07-1607.
District Court of Appeal of Florida, Fifth District.
December 21, 2007.
*897 Victor L. Chapman and R. Steven Ruta, of Barrett, Chapman & Ruta, P.A., Orlando, for Appellant.
William G. Osborne, of William G. Osborne, P.A., Orlando, for Appellee.
PLEUS, J.
The Steritech Group, Inc. ("Steritech") appeals a trial court order denying its motion to compel arbitration. Steritech argues that the trial court erred in finding that Cassandra MacKenzie was not party to an arbitration agreement and that her claim did not present an arbitrable issue. We agree and reverse.
In 1997, David MacKenzie executed an Amended and Restated Shareholder Agreement ("Shareholder Agreement") with Steritech. The Shareholder Agreement contained the following arbitration clause:

Arbitration. If any controversy or claim arising out of this Agreement cannot be settled by the parties, it shall be settled by arbitration in accordance with the rules of the American Arbitration Association then in effect. . . .
Six weeks later, David and Cassandra MacKenzie executed an Acknowledgment and Agreement for Division of Marital Property (Acknowledgment). The Acknowledgment provided that Mrs. MacKenzie could not become a legal owner of Steritech stock upon divorce or separation. Instead, the Acknowledgment granted Steritech the right to repurchase the shares at market value in the event of an involuntary transfer of marital property. Specifically, the Acknowledgment states:
1. Acknowledgement of Options. The Spouse [Cassandra MacKenzie] hereby joins as a party to the Agreement for the purpose of acknowledging and agreeing to be bound by the grants of the purchase option in the Shares . . . first to the Corporation, then to the other Shareholders, in the event Shares are involuntarily transferred to Spouse as a result of divorce or separation.
2. Determination of Purchase Price. The purchase price to be paid to the Spouse for the affected stock or for any proportionate interest held by the Spouse in the affected Shares and the terms of payment shall be determined in accordance with Sections 2.6, 2.7 and 2.8 of the Agreement.
The Acknowledgment expressly references 2.6-2.8, the provisions dealing with formulae for valuation. Section 2.6 entitled, "Determination of Purchase Price," explicitly provides that any disagreements concerning calculations giving rise to the Purchase Price as determined by the corporation's Treasurer "shall be submitted to arbitration in accordance with Section 6.7." However, section 2.3, regarding triggering dates, is not referenced in the Acknowledgment and would have to be interpreted from the original contract. Steritech argues that the Acknowledgment makes Cassandra MacKenzie a party to the original Shareholder Agreement, including the arbitration clause therein. We agree.
The dispute between Steritech and Cassandra MacKenzie is whether Steritech paid her the appropriate value for her interest in her husband's shares. In 2003, David and Cassandra MacKenzie separated and executed an agreement regarding division of marital property, which recognized that Cassandra MacKenzie was entitled *898 to one-half the value of the stock. However, the final dissolution judgment was not entered until 2005. Under the terms of the Acknowledgment, Steritech's right to repurchase is triggered when there is an involuntary transfer of shares. Following the dissolution, when Steritech learned of the 2003 agreement, it informed David MacKenzie that 2003 was the triggering date for the buy back provision. Accordingly, Steritech repurchased the shares and paid Cassandra MacKenzie the value from 2003, which was $230,025.73 less than the value on the date of final dissolution.
Cassandra MacKenzie sued for conversion based on the theory that Steritech wrongfully retained the $230,000.00. Steritech sought to compel arbitration and the trial court denied the motion. Steritech argues that Cassandra MacKenzie became a party to the Shareholder Agreement by signing the Acknowledgment. Additionally, Steritech argues that the dispute over the triggering date for its right to repurchase and the corresponding value of the shares is an arbitrable issue.
"This court reviews de novo a trial court's ruling on a motion to compel arbitration." Avid Eng'g, Inc. v. Orlando Mkt., Ltd., 809 So.2d 1, 3 (Fla. 5th DCA 2001). A ruling on a motion to compel arbitration is a question of law whereby the court must consider: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Id.[1]
The first question on review of a motion to compel arbitration is whether an agreement to arbitrate exists. Id. Steritech argues that because Cassandra MacKenzie signed the Acknowledgment that referenced the Shareholder Agreement, she is bound by the arbitration clause in the Shareholder Agreement. Because the language of the Acknowledgment clearly states that Cassandra MacKenzie joined the Shareholder Agreement, she is a party to that agreement and is bound by the mandatory arbitration clause therein.
An agreement to arbitrate, arising out of a contractual obligation, is essentially a question of law regarding the construction of that contract. Powertel, Inc. v. Bexley, 743 So.2d 570 (Fla. 1st DCA 1999). This means, as with any contract, only those parties who agree to be bound are included in an arbitration agreement. See Liberty Commc'ns v. MCI Telecomms. Corp., 733 So.2d 571, 575 (Fla. 5th DCA 1999) ("Courts are powerless to compel arbitration in the absence of a contract in which both parties have agreed to submit their grievances to arbitration."). It is not necessary for a party to be a signatory to a contract to be bound by its terms, but ordinary contract law governs such a situation. Id. It is well established law that when a court is interpreting a contract, clear and unambiguous terms should be given their plain meaning. Transamerica Ins. Co. v. Rutkin, 218 So.2d 509, 511 (Fla. 3d DCA 1969). Where there is no facial ambiguity, a provision of a contract should be read according to the common understanding of the terms. Bradley v. Sanchez, 943 So.2d 218, 221 (Fla. 3d DCA 2006).
In the instant case, the language of the Acknowledgment is clear and unambiguous. It states that Cassandra MacKenzie "hereby joins as a party to the Agreement." (emphasis added). The plain meaning of the language "joins as a party" *899 is that Cassandra MacKenzie joined the Shareholder Agreement just as her husband did six weeks earlier. The Shareholder Agreement contains a mandatory arbitration clause which bound Cassandra MacKenzie at the time she "join[ed] as a party to the [Shareholder] Agreement." Although the remainder of the clause says: "for the purpose of acknowledging and agreeing to be bound by the grants of the purchase options," this language does not make the Acknowledgment ambiguous or unclear. It does not limit the extent to which Cassandra MacKenzie joins the Shareholder Agreement; it merely states her reasons for doing so.
Because the Acknowledgment signed by Cassandra MacKenzie clearly states that she joined the Shareholder Agreement as a party, she is bound by the terms of the Shareholder Agreement, including the arbitration provision. Accordingly, Cassandra MacKenzie agreed to arbitrate any claims that arise out of the Shareholder Agreement and her interest in the shares.
The second question we must ask when considering a motion to compel arbitration is whether an arbitrable issue exists. Avid Eng'g, Inc., 809 So.2d at 3. Both "Florida and federal courts construe the scope of arbitration provisions in favor of arbitrability." Liberty Commc'ns v. MCI Telecomms., 733 So.2d 571, 574 (Fla. 5th DCA 1999) (internal citations omitted). Steritech argues that Cassandra MacKenzie's claim for conversion is an arbitrable issue. She responds that because the cause of action sounds in tort, rather than contract, the cause does not arise out of the Acknowledgment or Shareholder Agreement and is not arbitrable. However, because the common law tort action is sufficiently connected to the contract, Cassandra MacKenzie's claim presents an arbitrable issue.
We have previously recognized that "an agreement to arbitrate in a contract . . . does not necessarily mandate arbitration of a subsequent and independent tort action based upon common law duties." Episcopal Diocese of Cent. Fla. v. Prudential Secs., Inc., 925 So.2d 1112, 1115 (Fla. 5th DCA 2006). The test to determine whether a tort claim falls within a contractual arbitration clause is to ask "whether the tort claim, as alleged in the complaint, arises from and bears such a significant relationship to the contract between the parties as to mandate application of the arbitration clause." Id. (citing Seifert v. U.S. Home Corp., 750 So.2d 633 (Fla.1999) (internal quotations omitted)).
Following Episcopal Diocese, we again considered the scope of arbitration clauses in Beazer Homes Corp. v. Bailey, 940 So.2d 453 (Fla. 5th DCA 2006). In Beazer, we recognized "that tort claims based on duties that are dependent on the existence of a contract are normally arbitrable" and that "a dispute arises from a contract if it at least raises an issue that requires reference to or construction of some portion of the contract for resolution." Id. at 461. Thus, it does not matter whether the cause of action is based on statute or common lawif it is sufficiently connected to and "growing out of a contract which covers the dispute," then it is subject to arbitration. Id. at 461-62.
In this case, the disputed issues are the proper valuation of the shares owned by David MacKenzie and the triggering date for the company's right to repurchase Cassandra MacKenzie's interest. Those issues grow out of a contract that covers the dispute because the contract provides a definition of triggering events in section 2.3 and provides formulae for determining the purchase price in sections 2.6 and 2.7. Both of those questions require reference to the Shareholder Agreement. Accordingly, *900 this is a case where "the tort claim, as alleged in the complaint, arises from and bears such a significant relationship to the contract between the parties as to mandate application of the arbitration clause." Episcopal Diocese, 925 So.2d at 1115.
REVERSED.
GRIFFIN and THOMPSON, JJ., concur.
NOTES
[1] Waiver of the right to compel arbitration is not an issue in this case. Filing of a motion to stay and compel arbitration is not sufficient participation in a lawsuit to constitute waiver. See, e.g., Hubbard Constr. Co. v. Jacobs Civil, Inc., 969 So.2d 1069 (Fla. 5th DCA 2007).