**Richard MERUELO Appellant**

v.

**Louis Steven ROBLES Appellee.**

**No. 05–21442–CIV–JORDAN.**

United States District Court, S.D. Florida, Miami Division.

Aug. 22, 2005.

Patricia M. Arias, Esq., Coconut Grove, FL, for Appellant.

Elliot H. Scherker, Esq., Greenberg Traurig, Miami, FL, for Appellee.

## ORDER AFFIRMING BANKRUPTCY COURT'S DISMISSAL OF ADVERSARY COMPLAINT

JORDAN, District Judge.

Richard Meruelo appeals a final order of the bankruptcy court dismissing his adversary complaint, which asserted a breach of contract claim against the debtor, Louis Steven Robles. As explained below, the contract for the sale of Mr. Robles' residence was contingent upon approval of the bankruptcy court, and in the end the bankruptcy court did not give the necessary approval. Accordingly, Mr. Robles did not breach the contract, and the bankruptcy court's order of dismissal is AFFIRMED.

### I. STANDARD OF REVIEW

The bankruptcy court dismissed Mr. Meruelo's complaint because it failed to state a claim upon which relief could be granted. The bankruptcy court's ruling is therefore subject to plenary review. *See generally In re Chase & Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir.1990). *See also In re Dominguez*, 51 F.3d 1502, 1508 (9th Cir.1995); *In re A.R. Baron & Co., Inc.*, 280 B.R. 794, 798–99 (Bankr.S.D.N.Y. 2002). In exercising de novo review, I must accept as true the well-pleaded factual allegations in the complaint, and read them in the light most favorable to Mr. Meruelo. Dismissal is appropriate only if there is no set of facts which would entitle Mr. Meruelo to relief, or if a "dispositive issue of law" shows that there can be no recovery. *See Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir.2005).

### II. FACTS

Many of the bankruptcy proceedings summarized below are not specifically alleged by Mr. Meruelo in his three-page complaint. They are properly considered, however, for three reasons. First, Mr. Meruelo acknowledges that the contract at issue was "contingent upon bankruptcy court approval," and references some of the proceedings in the bankruptcy court concerning the contract. D.E. 2:1 at 2, ¶¶ 7–8. Second, I may take judicial notice of the bankruptcy court's file and orders for the limited purpose of recognizing the judicial acts the orders represent and the subject-matter of the litigation. *See In re Delta Resources, Inc.*, 54 F.3d 722, 726 (11th Cir.1995). Third, both parties refer in their briefs to the proceedings in the bankruptcy court, and those proceedings are not in dispute.

### A. THE BANKRUPTCY PROCEEDINGS AND THE MERUELO CONTRACT

Mr. Robles filed a petition for voluntary relief under Chapter 11 of the Bankruptcy Code in December of 2003. Several months later, in February of 2004, the petition was converted into a Chapter 7 proceeding.

In August of 2004, Mr. Robles and the trustee, with the bankruptcy court's approval, settled their dispute over Mr. Robles' homestead claim as to his primary residence in Key Biscayne, Florida. Pursuant to the bankruptcy court's order, Mr. Robles was to sell or refinance the property and pay a certain amount to the trustee. The order also allowed Mr. Robles to cancel a sale if, at any time prior to closing, he obtained a refinancing commitment.

The bankruptcy court, on December 10, 2004, entered an order approving competitive bidding and sale procedures for Mr. Robles' residence. In that order, the bankruptcy court, among other things, repeated that Mr. Robles could "refinance the residence, at any time prior to the closing of the sale of the residence." D.E. 1:114 at 3, ¶ 8.

Mr. Robles and Mr. Meruelo entered into a multi-million dollar contract for the

sale of the residence on February 7, 2005. Mr. Robles made several hand-written alterations to the standard residential sale and purchase contract. For example, Mr. Robles amended the contract to require bankruptcy court approval before the contract became effective:

11. EFFECTIVE DATE; TIME: The "Effective Date" of this Contract is the date on which this Contract is approved by the bankruptcy court.

The default and arbitration provisions of the contract were also amended:

15. DEFAULT: (a) Seller Default: If for any reasons other than failure of Seller to make Buyer's title marketable after diligent effort, Seller fails, refuses, or neglects to perform this Contract, Buyer shall receive a return of Buyer's deposit and waives the right to seek damages or to seek specific performance as per Paragraph 16.(b) Buyer Default: If Buyer fails to perform this Contract within the time specified, including timely payment of all deposits, Seller shall retain and collect all deposits paid and agreed to be paid as liquidated damages and waives the right to seek specific performance as per Paragraph 16; and Broker will, upon demand, receive 60% of all deposits paid and agreed to be paid to be split equally among cooperating brokers up to the full amount of the brokerage fee.

16. DISPUTE RESOLUTION. This Contract will be construed under Florida law. All controversies, claims, and other matters in question arising out of or relating to this transaction or this Contract or its breach will be settled as follows: (a) Disputes concerning entitlement to deposits made and agreed to be made: Buyer and Seller will have 30 days from the date conflicting demands are made to attempt to resolve the dispute through mediation. If that fails, Escrow Agent will submit the dispute, if so required under Florida law, to Escrow Agent's choice of arbitrator, a Florida court, or the Florida Real Estate Commission. Buyer and Seller will be bound by an resulting settlement or order. (b) All other disputes: Buyer and Seller will have 30 days from the date a dispute arises between them to attempt to resolve the matter through mediation, failing which the parties will resolve the dispute through neutral binding arbitration in the county where the Property is located. The arbitrator may not alter the Contract terms or award any remedy not provided for in this Contract. The award will be based on the greater weight of the evidence and will state findings of fact and the contractual authority on which it is based. If the parties agree to discovery, it will be in accordance with the Florida Rules of Civil Procedure and the arbitrator will resolve all discovery-related disputes. Any disputes with a real estate licensee named in Paragraph 19 will be submitted to arbitration. This clause will survive closing. . . .

D.E. 2:1, Exh. A at 4–5

On February 10, 2005, the bankruptcy court held a hearing on the parties' joint motion to approve the sale of Mr. Robles' residence, and orally granted approval.[1] In its written order, *see* D.E. 2:1, Exh. B, the bankruptcy court approved the contract "in all respects," permitted the parties to undertake each of the transactions referenced in the contract, and authorized Mr. Robles and the trustee to transfer all right, title, and interest in the residence to

---

1. The transcript of this hearing is not in the record. The bankruptcy court issued a written order memorializing its oral ruling the next day, but this order also incorporated its oral ruling from a second emergency hearing held on February 11, 2005.

Mr. Meruelo. Mr. Meruelo was directed to deliver the remaining $800,000 balance on the deposit to the escrow agent by 5:00 p.m. on February 11, 2005. Closing was scheduled for February 14, 2005. Significantly, the bankruptcy court stated that "[t]his order does not alter or amend any prior order of the court." *Id.* at 5, ¶ 18. Finally, the bankruptcy court added the following handwritten language at the end of its order: "Closing is subject to this court's February 11, 2005, bench ruling granting, in part, [Mr. Robles'] emergency motion for rehearing." *Id.* at 5, ¶ 20.

On February 11, 2005, Mr. Robles filed an emergency motion for rehearing of the oral ruling approving the sale, indicating that he would be able to obtain refinancing for the residence, pay the trustee the agreed amount, and satisfy all existing liens. The bankruptcy court held a hearing, granted partial relief, and ruled from the bench that if the state foreclosure was canceled (for one of various reasons), then "the trustee should not close on the sale and allow the refinancing to play out. At that point, the rights of Mr. Meruelo would have to be considered, but I have to balance his rights and the process here with the fact that this is [Mr. Robles'] homestead, and [Mr. Robles] did have the right to refinance prior to closing, and I'm going to accommodate that right and [Mr. Robles'] interest." D.E. 2:5, Exh. B at 21. It was this oral ruling that the bankruptcy court incorporated into the order it issued on February 11, 2005.

In a separate order, issued on February 14, 2005, the bankruptcy court memorialized its oral ruling from February 11, 2005. *See* D.E. 2:1, Exh. C. Noting that in December of 2004 it had allowed Mr. Robles to refinance the residence up until closing,

the bankruptcy court ruled (1) that it was not vacating the order approving the sale of the residence to Mr. Meruelo, (2) but closing was subject to the following conditions: (a) the closing was postponed until February 15, 2005; (b) the trustee and Mr. Robles were ordered to attend and consummate the closing of the sale to Mr. Meruelo unless (i) prior to the closing the trustee received $108,000 in cleared funds, and (ii) the foreclosure sale was canceled or postponed by Unibank (or a purchaser of its judgment) voluntarily or by written order of the state court. *Id.* at 1–2. If both of these conditions were satisfied, the trustee was ordered to cancel the closing of the sale to Mr. Meruelo pending further order of the bankruptcy court. *Id.* at 2.

Mr. Robles obtained $108,000 in financing from Cordell Funding and paid the trustee that amount. *See* D.E. 1:181 at 4. On February 15, 2005—the day of the scheduled closing—the state court canceled the foreclosure sale. *See* D.E. 2:21. On that same day, February 15, 2005, Mr. Meruelo tendered the purchase price to Mr. Robles and requested conveyance of the property. Mr. Robles refused to accept the tender or make the conveyance.

On March 8, 2005, the bankruptcy court held a hearing on Mr. Robles' motion to vacate the February 11, 2005, order approving the contract with Mr. Meruelo. *See* D.E. 1:181.[2] After being informed that Mr. Robles was in the process of concluding the refinancing process—there had been a partial refinancing to pay the trustee $108,000—and that the residence was still on the market, the bankruptcy court noted that the sale to Mr. Meruelo was "subject to this court's approval." *Id.* at 25. The bankruptcy court also ruled

---

2. By this time, Mr. Meruelo had already filed an adversary complaint against Mr. Robles in the bankruptcy court.

that Mr. Robles had the right, without any further order, to sell or refinance the residence, without prejudice to any claim by Mr. Meruelo against Mr. Robles. Finally, the bankruptcy court ruled that, while it was not vacating the order approving the contract for sale of the residence to Mr. Meruelo, it was terminating any approval and authorization for the trustee and Mr. Robles to close the sale with Mr. Meruelo. *Id.* at 31. In a written order issued on March 14, 2005, the bankruptcy court reiterated that the earlier order approving the sale of the residence to Mr. Meruelo would not be vacated, but that the "approval of [that] sale and authorization the parties to close that sale is terminated." D.E. 1:160 at 1–2.[3]

### B. MR. MERUELO'S ADVERSARY COMPLAINT

On February 22, 2005, Mr. Meruelo filed an adversary complaint against Mr. Robles, alleging breach of contract for not closing on the sale, and requesting specific performance and damages. *See* D.E. 2:1. Mr. Meruelo specifically acknowledged in the complaint that the contract between himself and Mr. Robles was "contingent upon bankruptcy court approval." *Id.* at 2, ¶ 7. Mr. Robles filed a motion to dismiss, for judgment on the pleadings, and for summary judgment. *See* D.E. 2:5. Mr. Meruelo filed a response. *See* D.E. 2:15.

The bankruptcy court held a hearing on April 22, 2005. *See* D.E. 2:19. After hearing argument, it granted Mr. Robles' motion to dismiss the adversary complaint for two reasons.

First, under the contract of sale, Mr. Meruelo was "limited to the remedy of return of [his] deposit as written," and the bankruptcy court specifically rejected Mr. Meruelo's argument that the waiver of remedies was limited to the alternative dispute resolution provision. *Id.* at 3 ("It is unambiguous that paragraph 15 is the paragraph dealing with default remedies. So reference to paragraph 16 doesn't change the fact that paragraph 15 is what sets out the remedies upon default."). Even if the waiver of a damages remedy was unenforceable for lack of mutuality under Florida law, there was no such problem with respect to the waiver of the remedy of specific performance. *Id.* at 3–4.

Second, the complaint failed to state a claim for breach of contract because the contract was always subject to the approval of the bankruptcy court. The rulings/orders issued on February 11, 2005, which initially approved the contract, remained subject to prior orders, including the order issued on December 10, 2004, which allowed Mr. Robles to refinance up to the time of closing. The orders which essentially canceled the sale to Mr. Meruelo were issued as a result of Mr. Robles exercising his rights under the December 10, 2004, order. *Id.* at 5–6.

The bankruptcy court later issued a written order incorporating its oral ruling, *see* D.E. 2:16, and Mr. Meruelo appealed.

### III. DISCUSSION

I find it unnecessary to address the first ground relied upon by the bankruptcy court—the available remedies to Mr. Meruelo under the contract (and the related issue of mutuality)—as the bankruptcy court's dismissal can be affirmed on the second ground. There was no breach by Mr. Robles because the bankruptcy court never gave the necessary approval.

■ "Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused." RESTATEMENT (SECOND) CONTRACTS § 225(1) (1981). The contract be-

---

**3.** Mr. Robles subsequently settled with the trustee for $5,000.

tween Mr. Meruelo and Mr. Robles was always contingent on bankruptcy court approval, which was a condition precedent under Florida law. *See, e.g., Field v. Perry,* 564 So.2d 504, 506 n. 3 (Fla. 5th DCA 1990) (provision in contract for sale of land that there would be no violation of governmental regulations at time of closing was "clearly a condition precedent"); *Kemiron Atlantic, Inc. v. Aguakem Int'l, Inc.,* 290 F.3d 1287, 1290 (11th Cir.2002) (failure to request mediation, which was a condition precedent to arbitration under the parties' contract, precluded enforcement of arbitration clause).

■ In the end, there was no bankruptcy court approval, and without such approval, there was no breach. First, the initial approval given by the bankruptcy court was conditional. The bankruptcy court expressly stated that its approval did not alter any of its prior orders, including the order of December 10, 2004, allowing Mr. Robles to refinance the residence up to the time of closing. Thus, the initial order approving the sale permitted Mr. Robles to seek, and obtain, refinancing up to the time of closing. Second, in the end the bankruptcy court did not provide the necessary approval, as it terminated the authorization and approval for the trustee and Mr. Robles to close on the sale to Mr. Meruelo. The bankruptcy court, acting on Mr. Robles' motion and representation that he had obtained refinancing, postponed the sale and essentially canceled it upon the occurrence of two events: (1) Mr. Robles paying the trustee $108,000 in cleared funds; and (2) the cancellation of the foreclosure sale. Those two events did occur, so the sale to Mr. Meruelo did not go through. Because the condition precedent was not satisfied, there was no breach by Mr. Robles. *See In re O'Brien Environmental Energy, Inc.,* 181 F.3d 527, 531 (3d Cir.1999) ("The only rights Calpine [the prospective purchaser] had ... were the right to require O'Brien [the debtor and seller] to seek approval by the bankruptcy court as per its contract and the right to enforce the contract *if such approval was secured.*") (emphasis added); *In re Big Rivers Electric Corp.,* 233 B.R. 726, 734 (Bankr.W.D.Ky.1998) ("if bankruptcy court approval is an express condition precedent to a contract, the contract is unenforceable absent the required bankruptcy court approval") (citing cases); *Land–O–Sun Dairies, Inc. v. Pine State Creamery Co.,* 200 B.R. 125, 127–28 (E.D.N.C.1996) (dicta) (if bankruptcy court approval is a condition precedent to contract for sale of debtor's assets, and such approval is reversed on appeal, debtor would not have a "valid claim against [the prospective purchaser] for breach of contract").[4]

Mr. Meruelo took a calculated risk by signing a contract that was subject to bankruptcy court approval. *Cf.* A. FARNSWORTH, THE LAW OF REGRETTED DECISIONS 99 (1998) ("A contract drafter, beset when expressing a commitment by apprehension of future fears, may seek ... middle ground by using language that confines the commitment."). He should have looked through the bankruptcy court file to see if Mr. Robles had any way out of the contract, and should have asked the bankruptcy court to give its unconditional approval for the sale.

---

4. It is probably important to note that the only issue on appeal is the bankruptcy court's dismissal of Mr. Meruelo's adversary complaint for breach of contract. This is not an appeal from any of the bankruptcy court orders with respect to approval of the contract between Mr. Meruelo and Mr. Robles. Mr. Meruelo, a non-creditor, likely would have lacked standing to appeal any of those orders, as he was not a "person aggrieved." *See O'Brien,* 181 F.3d at 531; *Pine State,* 200 B.R. at 127–28.

■ Furthermore, on these facts, there was no anticipatory breach by Mr. Robles when he sought rehearing of the initial order approving the sale. Mr. Robles was always able to refinance up to the time of closing, and the order conditionally approving the sale did not alter this right. In other words, Mr. Meruelo's rights under the contract were subject to Mr. Robles' rights as the debtor, and Mr. Robles did what he had always been allowed to do. *See generally Parker–Marshall Group v. Lee,* 188 B.R. 297, 300 (M.D.Fla.1995). Had the bankruptcy court approved the contract unconditionally and without reference to any of its prior orders, thereby eliminating Mr. Robles' right to obtain re-

financing until the time of closing, this would probably be a different case. But there was no such unconditional approval, and therefore no breach of contract.

## IV. CONCLUSION

The bankruptcy court's dismissal of Mr. Meruelo's adversary complaint for breach of contract is AFFIRMED, and this case is CLOSED.[5]

---

**5.** Mr. Robles' motion to dismiss the appeal is denied, as I extended the time for filing a statement of issues.