[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 08, 2002
THOMAS K. KAHN
CLERK

No. 01-16400

D.C. Docket No. 01-00926-CV-T-24

KEMIRON ATLANTIC, INC.,

Plaintiff-Appellee,

versus

AGUAKEM INTERNATIONAL, INC.,

Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Florida

**(May 8, 2002)**

Before TJOFLAT, BLACK and MARCUS, Circuit Judges:

PER CURIAM:

This interlocutory appeal arises from a civil action filed by Kemiron Atlantic, Inc. ("Kemiron"), against Aguakem International, Inc. ("Aguakem").[1] Kemiron alleges that its predecessor in interest contracted to sell Aguakem ferric sulfate, and Aguakem failed to pay for the some of the shipment. Kemiron sued Aguakem for breach of contract and unjust enrichment and sought declaratory relief. The contract contained an arbitration clause, requiring the parties to arbitrate the dispute. The sole issue on appeal is whether the district court erred in denying Aguakem's motion to stay the action pending arbitration. We find no error and therefore affirm.

## I.

Kemiron produces ferric sulfate and Aguakem sells and distributes the substance. Both parties entered into a requirements contract, entitled "Exclusive Purchase and Sale Agreement" (hereinafter "Agreement") on June 2, 1995. Kemiron agreed to supply Aguakem with ferric sulfate, and, in return, Aguakem promised to pay for the material. The contract provided, however, that if any

---

[1] Kemiron invoked diversity jurisdiction under 28 U.S.C. § 1332. Kemiron is a Delaware corporation, with its principal place of business in Savannah, Georgia. Aguakem is a Florida corporation, with its principal place of business in Florida.

dispute arose from the agreement between the two companies, the matter would be resolved according to section 25 of the Agreement. Section 25, entitled "Dispute Resolution," provided as follows:

> The parties, convinced that a large part of the litigation arising from the nonfulfillment of contracts and agreements is caused by a failure to reduce the essential terms and conditions to writing, and much of the remainder of the litigation in connection with written contracts is caused by weaknesses of various kinds in such written documents, have endeavored to use every care and caution in the preparation of this instrument, knowing nevertheless that a relationship of this character may pose new problems from time to time requiring subsequent resolution and agreement. It shall therefore be the aim and intention of the parties, and in their mutual interests, to provide practical and dignified means for friendly resolution of any differences in interpretation of this Agreement or the settlement of disputes of any kind that may arise between the parties.
>
> To this end, it is mutually agreed that the parties shall be free to bring any and all such matters to the attention of the other at any time without prejudicing their harmonious relationship and operations hereunder, and that the offices of either party shall be available at all times for the prompt and effective adjustment of any and all such differences, either by mail, telephone, or personal meeting under friendly and courteous circumstances.
>
> *In the event that a dispute cannot be settled between the parties, the matter shall be mediated within fifteen (15) days after receipt of notice by either party that the other party requests the mediation of a dispute pursuant to this paragraph.* If the parties are unable to select a mediator, the Florida Mediation Group shall select a mediator. The parties agree to use their best efforts to mediate a dispute.
>
> *In the event that the dispute cannot be settled through mediation, the parties shall submit the matter to arbitration within ten (10) days after receipt of notice by either party.* The arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect. The parties shall each select an

arbitrator and the two arbitrators thus selected shall select a third arbitrator. These three arbitrators shall constitute the arbitration panel. It is understood that a judgment or award rendered, which may include an award of damages, may be entered in any court having jurisdiction thereof.

(emphasis added).

On October 13, 2000, Kemiron made a demand on Aguakem for payment. On November 30, 2000, Aguakem sent Kemiron a notice acknowledging that it owed some of the money, but not all. A payment was not included with the notice. Kemiron presented Aguakem with another demand on April 5, 2001. Aguakem did not respond. Kemiron terminated the Agreement with Aguakem on May 3, 2001.

On May 15, 2001, Kemiron then brought this suit. On July 5, 2001, Aguakem filed, among other matters, a motion to stay the proceeding pending arbitration, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq..

On October 1, 2001, the district court held an evidentiary hearing on Aguakem's motion to stay the proceeding pending arbitration; the presidents of both Kemiron and Aguakem testified and both parties presented exhibits. Kemiron's President, Lawrence Hjersted, testified that he did not receive any notice or indication from Jorge Unanue, President of Aguakem, that Unanue

4

wanted to mediate the dispute at hand.[2]  Unanue admitted that "I didn't - - have not given notice per the agreement terms, no" when questioned by the district court.

The court decided the motion on the record after the end of the hearing, and in a written order entered seven days later.  The court ruled that, in order for there to be a duty to arbitrate, the parties "must first mediate their dispute and then one party must give notice of their desire to arbitrate the dispute."  The court subsequently found that neither party gave notice to mediate or arbitrate, and consequently, the duty to arbitrate was not triggered.

## II.

## A.

The ability of parties to agree to arbitrate disputes is well-established. Congress, in 1925, enacted the FAA, seeking to "reverse the longstanding judicial hostility to arbitration agreements . . . to place [these] agreements on the same footing as other contracts. . . [and to] manifest a liberal federal policy favoring arbitration agreements."  Equal Employment Opportunity Comm'n. v. Waffle House, Inc., __ U.S. __, 122 S. Ct. 754, 761-62, 151  L. Ed. 2d 755 (2002)

---

[2]  Hjersted did testify, however, that Unanue told him that Aguakem wanted to mediate a different disagreement involving Aguakem, Kemiron and a third-party company called Checkpoint.  Kemiron and Aguakem had an agreement with Checkpoint to dispose of chemical by-products.

(citations omitted). Indeed, the Supreme Court has stated that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitrations." Moses H. Cone Mem'l. Hosp. v. Mercury Construction Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). Notwithstanding this strong federal policy, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). Moreover, the intent of the contracting parties is paramount and can trump the FAA's policy in favor of arbitration. See Mastrobuono v. Shearson Lehman Hutton, 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) ("[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties."); see also Waffle House, 122 S.Ct. at 762.

In this case, the district court denied Aguakem's petition to stay the action pending arbitration on the ground that Aguakem did not perform the steps necessary, as spelled out in the contract, to trigger arbitration. We review this legal conclusion de novo. See Perez v. Globe Airport Sec. Serv's., 253 F.3d 1280, 1283 (11th Cir. 2001). Since an evidentiary hearing was held and findings of fact were made, we review those findings for clear error. See Seaboard Coast Line R.R. v.

6

Trailer Co., 690 F.2d 1343, 1348 (11th Cir. 1982).

B.

The appellant contends that Sections 2 and 3 of the FAA, in addition to the FAA's general policy encouraging arbitration, require the district court to stay the proceedings and direct the parties to enter into arbitration. Enforcement of arbitration provisions is governed by the FAA. Specifically, section 2, entitled, "Validity, irrevocability and enforcement of agreements to arbitrate" states:

> A written provision in any...contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract.

Id.

Section 3 of the FAA provides for proceedings to be stayed in district courts when an issue in the proceeding "is referable to arbitration." Id.

We disagree with the appellant that the FAA requires the district court to stay the proceedings pending arbitration. Although there is an arbitration agreement between the parties, it is conditioned by the plain language of section 25 of the Agreement, which prescribes what must take place before arbitration.

7

Specifically, the parties had to request mediation and "the matter shall be mediated within fifteen (15) days after receipt of notice by either party that the other party requests mediation." Moreover, the Agreement states that, if the dispute "cannot be settled through mediation, the parties shall submit the matter to arbitration within ten (10) days after receipt of notice by either party."

Thus, under the plain language of the contract, to invoke the arbitration provision, either party must take two steps: first, Aguakem or Kemiron must request mediation and provide notice of the request to the other party. If the mediation subsequently fails, arbitration still cannot take place. The aggrieved party must then take a second step, by providing additional notice, under the terms of the contract, that they wish to pursue arbitration. Then, and only then, is the arbitration provision triggered.

The FAA's policy in favor of arbitration does not operate without regard to the wishes of the contracting parties. See Mastrobuono, 514 U.S. at 57, 115 S.Ct. at 1216. Here, the parties agreed to conditions precedent before arbitration can take place and, by placing those conditions in the contract, the parties clearly intended to make arbitration a dispute resolution mechanism of last resort. Unanue told the court that he did not give any notice to Kemiron that he wanted to mediate the disagreement over the ferric sulfate payment. Hjersted testified that

8

Unanue failed to provide any notice or indication that Aguakem wanted a mediation with respect to the payment dispute. Thus, neither party met the first condition required to invoke the arbitration clause in the Agreement. In fact, the record reveals that Aguakem still has not demanded any mediation or arbitration. Because neither party requested mediation, the arbitration provision has not been activated and the FAA does not apply.[3]

For the foregoing reasons, the decision of the district court is

AFFIRMED.

---

[3]We need not discuss the issue of whether Aguakem waived its right to arbitrate since we have found that it did not fulfill the conditions precedent to trigger arbitration under the Agreement.