940 So.2d 453 (2006)
BEAZER HOMES CORP., Fabian Chiriboga, et al., Appellants,
v.
Edward BAILEY, Jill R. Bailey, et al., Appellees.
No. 5D05-2229.
District Court of Appeal of Florida, Fifth District.
September 8, 2006.
Rehearing Denied October 27, 2006.
*454 Steven L. Brannock, of Holland & Knight LLP, Tampa, and Thomas M. Burke and Christopher Annunziato of Holland & Knight LLP, Orlando, for Appellant.
Kathleen M. Skambis and Christopher C. Skambis of The Skambis Law Firm, Orlando, for Appellee.
*455 SHARP, W., Senior Judge.
Beazer Homes Corporation (Beazer), a contractor who sold lots to, and built homes for, the plaintiffs involved in this lawsuit, and Fabian Chiriboga (Chiriboga) and Ralph Rosen (Rosen), Beazer's sales representatives, appeal from a non-final order that denied their motions to compel arbitration.[1] This lawsuit commenced when four home buyers, the Baileys, the Heningers, the Margolis and the Magees (Buyers) sued Beazer, Chiriboga and Rosen, for various causes of action, which stem from alleged oral misrepresentations and failures to disclose, committed by Beazer's sales agents. Each of the contracts between Beazer and the respective buyers, contain an agreement to arbitrate controversies arising out of the contract. We reverse and remand.
The Buyers alleged that they bought lots and built homes after Chiriboga and Rosen promised them that, from their lot and home, they would have an unobstructed view of a golf course, which was adjacent to the subdivision in which the lots were sold. Beazer owned the lots, but it did not develop the subdivision nor did it have any interest in the golf course. The Buyers alleged that Chiriboga and Rosen convinced them to purchase specific lots "with a golf course view," for a premium of either $30,000 or $32,000. They were also told that the golf course owner might build a wall that would partially block the view of the golf course, but that this was not likely. However, the sales representatives persuaded the Buyers to construct two story homes with second story balconies (in the cases of three Buyers), to insure that their golf course view would never be blocked. The Buyers further allege that at the time these representations were made, Beazer and its sales representatives knew that the golf course owner planned to construct an eight-foot wall in the near future, as well as plant trees which would totally block the Buyers' view of the golf course, even from the second stories of their homes.
Thereafter, when the golf course owner revealed to the public its plans to build the wall and to block off the golf course view with the tree landscaping, the Buyers sued the appellants, alleging fraud and violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). Each Buyer alleged Beazer and its sales representatives had misrepresented that their lots would have a permanent golf course view, at least from the second story of their homes. The Buyers alleged that they relied on those misrepresentations and failure to disclose, which was known to Beazer and its sales representatives. As a result, the Buyers averred that they suffered damages, in the form of the premium price paid for their lots, and the cost of the balcony options. For the fraud count, the Buyers sought only a damage remedy. The FDUTPA counts are based on the same set of facts, and the Buyers sought damages and an award of attorney fees.
The Buyers disclose in their complaint that the covenants and restrictions in the Public Records for their subdivision expressly do not guarantee a view of the golf course by the developer, an entity different than Beazer, or the homeowners association. Paragraph 2 of Article XII provides:
Neither the Developer nor the Association guarantees or represents that any view over and across the Golf Course from adjacent or approximate Lots will be preserved without impairment. Neither the Developer, the Association nor the owner of the Golf Course will have *456 any obligation to prune or thin trees or other landscaping, and the owner of the Golf Course will have the right, in its sole and absolute discretion, to operate and maintain the Golf Course in accordance with any standards adopted from time to time by such owner and to add and remove trees, walls, fences and other landscaping to and from the Golf Course from time to time. In addition, the owner of the Golf Course, in its sole and absolute discretion, may change the location, configuration, size and elevation of the trees, bunkers, fairways and greens on the Golf Course from time to time. Any such additions or changes to the Golf Course may affect the view of the Golf Course from the Lots.
Appellants responded to the Buyers' complaint by moving to abate and to compel arbitration based on the sales contract signed by Beazer and the Buyers. Article X.C. of the contracts provides:
Should a controversy, claim or dispute arise out of this contract, Buyer(s) shall submit to binding arbitration. Seller and Buyer hereby agree to a waiver of a jury trial.
Appellants argued that claims for fraud in the inducement directed to the entire agreement or provisions other than the arbitration clause contained within the agreement, should be resolved by arbitration, and that counts brought under FDUTPA should also be properly submitted to arbitration. Chiriboga and Rosen argue that the counts filed against them, in their individual capacities, should be arbitrated as well, because they are agents of Beazer, and the causes of action against them are interdependent with claims against Beazer.
The Agreements of Sale also contain an integration provision in Article X. CONTRACT, A.
This contract supersedes all prior contracts between the parties here to. There are no collateral understandings, representations or agreements other than those contained herein or added by written instrument attached hereto, duly executed by Buyer and Seller. No salesman, employee, agent or seller has any authority to modify the terms hereof, or make agreements, representations, or promises which might postpone, limit, modify, or extinguish the terms hereof. No agreement or representation has been made by Seller, its agent or representatives to obtain any loan for Buyer or to guarantee the Buyer will secure any loan.
There is no mention in the contracts of any golf course view.
The trial court denied the motion to compel arbitration, without giving reasons. Our review of this issue is de novo. See Vacation Beach, Inc. v. Charles Boyd Construction, Inc. 906 So.2d 374 (Fla. 5th DCA 2005)(Florida law); Qubty v. Nagda, 817 So.2d 952 (Fla. 5th DCA 2002)(federal law); Hirshenson v. Spaccio, 800 So.2d 670 (Fla. 5th DCA 2001)(Florida law); Florida Title Loans, Inc. v. Christie, 770 So.2d 750 (Fla. 1st DCA 2000)(Florida law). The case sub judice involves the application of Florida law, rather than federal law.
The Buyers argued below, as well as on appeal, that the cause of action for fraudulent inducement is not within the scope of the arbitration provision. Seifert v. U.S. Home Corporation, 750 So.2d 633 (Fla. 1999), applying Florida law, describes the kind of arbitration clause involved in this case as "narrow" rather than "broad" because it refers only to disputes arising "out of" the contract, rather than "relating to" the contract. Thus, they maintain, the scope of such a narrow arbitration provision encompasses only claims having a direct *457 relation to the terms and provisions of the contract, its interpretation and performance. They submit that fraud in the inducement claims should be excluded under state law, even though under federal law, they would be included.
The Buyers also argue that the essence of this controversy is a tort. Fraudulent inducement involves a contract only tangentially. The controversy does not concern the duties and obligations of the parties regarding the construction and sale of the homes. The allegations merely relate to a duty owed the general public not to lie and make false representations to induce a sale of real estate. They argue that Seifert has decreed that such tort causes of action are not even within the scope of a broad arbitration clause. They also argue that Chiriboga and Rosen cannot require arbitration because they are not parties to the contract.
I. Scope of the Arbitration ProvisionFraud in the Inducement Claims
As a matter of pure logic, if a contract is entered into because of the fraud or misrepresentations of one party, the whole contract should fail, including any agreement to arbitrate contained in the contract. However, that is not the course which case law has taken. Beginning with Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the majority ruled that if the alleged fraud related to the arbitration clause itself, then a court should resolve the issue. But if the fraud in inducement related to the whole contract which contained an agreement to arbitrate, that issue should be resolved by arbitration. The three dissenting judges described the majority holding as "fantastic."
If there has never been any valid contract, then there is not now and never has been anything to arbitrate. If Prima's allegations are true, the sum total of what the Court does here is to force Prima to arbitrate a contract which is void and unenforceable before arbitrators who are given the power to make final legal determinations of their own jurisdiction, not even subject to effective review by the highest court in the land.
388 U.S. at 425, 87 S.Ct. 1801.
Granted the arbitration provision in Prima Paint was broader than the one involved in this case, and the Court was interpreting federal law, nevertheless, the courts in this state have followed that ruling in fraud in the inducement cases, almost without exception, whether applying federal or state law.[2] In Florida Dept. of Ins. v. World Re, Inc., 615 So.2d 267 (Fla. 5th DCA 1993), applying federal law, this court applied federal law in determining that a controversy involving fraud in the inducement directed at the totality of a contract, was not properly sent to arbitration because the scope of the arbitration provision was so narrow, i.e. "an irreconcilable difference of opinion [arising] as to the interpretation of this certificate."
However, the World Re opinion recognized that Prima Paint holds that a claim of fraudulent inducement may be within the scope of an arbitration agreement. It cited federal cases which have required arbitration for fraud in the inducement claims under arbitration provisions similar to the one involved in this case. Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840 (2d Cir.1987)("all claims and disputes of whatever nature arising under this contract"); S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc., 745 F.2d 190 (2d Cir.1984)("any question or dispute *458 aris[ing] or occur[ring] under" the agreement).
In Medident Construction, Inc. v. Chappell, 632 So.2d 194 (Fla. 3d DCA 1994), the court applied state law, but followed the Prima Paint ruling. In that case, a dispute involved a construction contract, which contained an arbitration provision that "all disputes between the parties" would be submitted to arbitration. That arbitration clause is no broader than the one involved in this case. The court ruled:
The issue on appeal is whether the initial validity of the contract as a whole is to be decided by the trial court or by arbitration pursuant to the arbitration clause in the contract. Where fraud or some other ground for avoidance or invalidity of contract is alleged as to an entire agreement rather than specifically as to the arbitration clause contained within that agreement, the entire matter should be resolved by arbitration. [citations omitted] Only if the attack is specifically and exclusively directed toward the arbitration clause or a separate agreement to arbitrate may the court try the issue before submitting the balance of the dispute to arbitration.
Id. at 194.
As in this case, the validity of the arbitration clause itself was not challenged. All of the allegations attacked the contract as a whole. The Medident court concluded that the relief sought by the plaintiff below (a declaration of the parties' rights under the contract, compensatory and punitive damages and fees pursuant to the contract), was within the scope of the arbitration provision.
In Great Western Financial Securities Corp. v. Grandison, 701 So.2d 1202 (Fla. 5th DCA 1997), which applied federal law, this court ruled that a fraud and civil theft dispute should be arbitrated, based on an arbitration clause which provided "all controversies between the parties" would be submitted to arbitration, citing Medident, and other Florida court of appeal decisions. See also Micronair, Inc. v. City of Winter Haven, 800 So.2d 622 (Fla. 2d DCA 2001). That arbitration clause is no broader than the one involved in this case.
In Qubty, this court applied federal law, but said it was the same under Florida law, in ruling that a fraud in the inducement claim was within the scope of an arbitration provision requiring arbitration of "all controversies that may arise between us concerning any order or transaction, or the continuation, performance or breach of this or any other contract between us." That arbitration clause is also no broader than the one involved in this case.
A line of cases which diverges from Prima Paint holds that where a party seeks to rescind a contract based on fraud in the inducement, the arbitration provision in the contract itself is not enforceable. The rationale is similar to that employed by the Prima Paint minority quoted above: If there is no contract, there can be no arbitration clause "of the contract." See Sanchez v. Criden, 899 So.2d 326 (Fla. 3d DCA 2005); Diez-Sierra v. Aguera, 762 So.2d 557 (Fla. 3d DCA 2000); Borck v. Holewinski, 459 So.2d 405 (Fla. 4th DCA 1984). A trial court, as well as the appellate court, must determine whether "true rescission" is sought, as opposed to partial rescission in conjunction with a claim for damages and other relief. Borck.
However, this exception to the Prima Paint rationale is limited to cases where only rescission is sought, and where the controversies between the parties have no relation to the contract itself. As Judge Aldrich noted in Lummus Co. v. Commonwealth Oil Refining Co., 280 F.2d 915 (1st Cir.1960), arbitration provisions could *459 prove easily avoided, if breach of contract claims recast in terms of fraud, sufficed. If the cause of action essentially seeks damages for deceit or fraud, and involves an affirmance of part of the contract, the arbitration clause in the contract should be given force and effect. These kinds of disputes can be said to involve "voidable" as opposed to "void" contracts. In the case of void contracts, arbitration clauses in the contract may be unenforceable until the legality of the contract is determined.[3]
In this case, the fraud in inducement claims could have been restated as breach of contract claims because the Buyers do not seek rescission of the entire contract but rather only damages. And it may be impossible to obtain complete rescission under the circumstances in this case. Further, as noted above, there is an integration clause in the sales contract, which may affect the outcome of this case, and thus, the resolution of controversies necessarily will involve an interpretation of the sales contracts.[4]
Nor do we think other cases denying enforcement of arbitration clauses in other contexts are applicable to this case. In Grosseibl v. J. Chris Howard Builders, Inc., 739 So.2d 1255 (Fla. 5th DCA 1999), which applied Florida law, this court ruled that an arbitration provision in a home warranty which applied to breach of warranty claims, did not apply to claimed construction and building code defects because the warranty expressly excluded such claims and the warranty was separate from the construction contract. In this case there is only one contract.
In Citigroup, Inc. v. Amodio, 894 So.2d 296 (Fla. 4th DCA 2005) and Episcopal Diocese of Central Fla. v. Prudential Securities Inc., 925 So.2d 1112 (Fla. 5th DCA 2006), both of which applied federal law, the courts rejected compelled arbitration of disputes because they were outside the scope of the arbitration provisions. In Amodio, an investor sued for negligent misrepresentation and fraud, based on losses for having retained WorldCom stock in his account. The account agreement required arbitration of "all controversies which may arise concerning any order or transaction of the construction, performance or breach of this agreement." The investor later sought advice from an analyst with a company unrelated to the holder of his investment account, who told him not to sell WorldCom. The investor relied on the advice and lost all value from his WorldCom portfolio. Both the trial court and the appellate court read the scope of the arbitration agreement narrowly, and determined that the dispute did not involve orders, transactions or performance of the investment agreement, and thus arbitration could not be compelled. However, in this case, the arbitration clause is broader and requires arbitration of any claim, dispute or controversy arising out of the contract.
Similarly, the Episcopal Diocese case narrowly construed the arbitration clauses involved. One required arbitration of "all *460 controversies which may arise between us concerning any transaction, . . . my account, or any other agreement between us." The other clause required arbitration of all controversies that "may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement." In that case, the essence of the claim was that the investment company failed to warn its client, after the client left the investment company, against placing its account with a former employee of the investment company, when the investment company knew the employee had mishandled the client's account and had been fired by it for cause. The court determined that the scope of the arbitration clause did not encompass breach of a common law duty to warn, after termination of the investment agreement, and noted the narrow language of the arbitration clause itself, which limited its scope to disputes about transactions in the account and the construction and performance of the investment agreement. The arbitration clause in the case at issue is not so limited.
II. Impact of Seifert v. U.S. Home Corp., 750 So.2d 633 (Fla.1999).
The Buyers contend that Seifert has impacted the Prima Paint line of cases, by removing from arbitration, tort and fraud claims, such as those asserted in this case. We disagree. Seifert does emphasize the importance of the broad or narrow language used in arbitration provisions. But as demonstrated above, the arbitration language used in this case has been considered sufficient to require arbitration of fraud in the inducement claims by both state and federal courts, interpreting state and federal law.
Seifert carved out of the requirement to arbitrate under state law the kind of tort claims that are based on a general duty owed to all people, regardless of whether or not they were parties to a contract, such as personal injury claims in the context of defective design and strict liability. In Seifert, a homeowner who had signed a contract with the builder, filed a wrongful death case against the builder after her husband died, due to a defective building design which allowed the air conditioning system to pick up carbon monoxide gas from the garage and carry it into the home. The court described the essence of that controversy as a subsequent and independent tort, based on common law principles. It was merely fortuitous that the plaintiff had signed a contract with the defendant. The duty of providing a safe design was owed to the public generally, not just the parties to the contract.
However in this case, the duties and relationships of the parties were created only by the sales contract. No third persons could have sued Beazer under these circumstances, although indeed, there is a general common law duty not to lie or misrepresent facts in connection with selling real estate.
In Kaplan v. Kimball Hill Homes Florida, Inc., 915 So.2d 755 (Fla. 2d DCA 2005), applying Florida law, the court dealt with an arbitration clause in a contract between a home purchaser and builder, and the purchaser's law suit for fraud and fraud in the inducement. The purchasers claimed the builder made false statements regarding its ability to complete the home in the time required by the contract, and failed to disclose facts regarding water runoff and drainage from an adjacent property, as well as obstruction by landscaping of the golf course view from the home site. The arbitration clause required arbitration of "any controversy or claim between the [parties] relating to this agreement or . . . the home or the project or community in which the home is located, whether the controversy or claim arose or is based upon actions and occurrences before or after the date of this agreement."
*461 The court ruled that the disputes fell within the scope of the arbitration provision, and that the legal label attached to the dispute, tort or breach of contract, is not controlling. It noted that the arbitration clause in this case was "broad," but it also said that tort claims based on duties that are dependent on the existence of a contract are normally arbitrable. It found that there was an undeniable nexus between the disputes and the contract, and that the resolution of those issues would necessarily require reference to the contract. It followed the Prima Paint rule that since the claim attacks the entire contract rather than specifically the arbitration provision, the dispute must be resolved by the arbitrators.
Similarly in Maguire v. King, 917 So.2d 263 (Fla. 5th DCA 2005)(apparently applying Florida law), this court held that fraud in the inducement claims regarding a sale of real property were subject to arbitration by a broad arbitration clause in the contract. The purchaser claimed he had been promised two acres of drainage rights but had only received one. Applying Seifert, this court held that a dispute arises from a contract if it at least raises an issue that requires reference to or construction of some portion of the contract for resolution. Thus the tort claims based on duties created by a contractual relationship between the parties are normally arbitrable. It cited with approval many Florida appellate decisions which have held, both before and after Seifert, that a claim of fraud in the inducement does not preclude enforcement of an arbitration provision.
Stacy David, Inc. v. Consuegra, 845 So.2d 303 (Fla. 2d DCA 2003),[5] involved fraud in inducement claims or negligent misrepresentations arising in the context of a contract to buy a car. The contract contained a broad arbitration clause. The court held that fraud in the inducement claims regarding purchases of automobiles are dependent on the contract and are considered as arising out of or relating to the contract. It cited cases before and after Seifert, and concluded that Seifert did not change this line of cases. We agree.
III. FDUTPA Claims Subject to Arbitration.
Claims brought under FDUTPA have been held to be subject to arbitration if a contract between the parties provides for arbitration.[6] For example, In Aztec Medical Services, Inc. v. Burger, 792 So.2d 617 (Fla. 4th DCA 2001), the disputes involved numerous contracts between the parties concerning how doctors would render healthcare services to individuals covered under a health care provider's health benefit contract and how they would be compensated. The doctors brought suit alleging breach of contract, and violations of FDUTPA, which rested on the same facts and were parallel to the breach of contract claims. The court held that the arbitration provision was broad enough to encompass the FDUTPA claims. It provided: that "any dispute" between the parties about their "business relationship" would be submitted to arbitration.
Merely because the dispute or claim is founded on breach of a statute rather than breach of contract, does not exempt it from arbitration. See Prudential Securities, Inc. v. Katz, 807 So.2d 173 (Fla. 3d DCA 2002). If the statutory cause of action is based, as in this case, on *462 matters growing out of a contract which covers the dispute, and relies on the same facts as the dispute which is subject to arbitration, there is no basis to exclude the FDUTPA issue from arbitration.[7]
Where claims of fraud are alleged based on the FDUTPA, Florida courts have refused to enforce arbitration clauses on only a limited basis, such as where the arbitration clause is unconscionable, Fonte v. AT & T Wireless Services, Inc., 903 So.2d 1019 (Fla. 4th DCA 2005); Stewart Agency, Inc. v. Robinson, 855 So.2d 726 (Fla. 4th DCA 2003); where it is against public policy, Presidential Leasing, Inc. v. Krout, 896 So.2d 938 (Fla. 5th DCA 2005); or where the provision is deemed to limit access to the courts, Value Car Sales, Inc. v. Bouton, 608 So.2d 860, 861 (Fla. 5th DCA 1992). Thus, arbitration under the FDUTPA rises or falls on grounds such as equity, public policy, or constitutional prohibition.[8] None of these grounds was alleged in the complaints in this case.
IV. Sales Representatives of Beazer Entitled to Compel Arbitration.
The Buyers argue that Chiriboga and Rosen are not entitled to enforce the arbitration provision because they are not parties to the sales contracts. However both Florida courts and the federal courts have recognized that non-signatories can compel arbitration by a signatory, when the proceeding concerns actions taken by the non-signatory/agent of a signatory. See Koechli v. BIP International, Inc., 870 So.2d 940, 944 (Fla. 1st DCA 2004); Liberty Communications, Inc. v. MCI Telecommunications Corp., 733 So.2d 571 (Fla. 5th DCA 1999); Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Melamed, 453 So.2d 858, 860 (Fla. 4th DCA 1984). Logically a corporation cannot act except through its agents.
In this case, the alleged misrepresentations or failures to disclose were accomplished by Beazer employees, Chiriboga and Rosen, on Beazer's behalf. There is no allegation that Chiriboga or Rosen acted separately and independently from Beazer, and the allegations against them mirror the allegations against Beazer. In sum, the counts against Beazer rely entirely on the actions of its agents, Chiriboga and Rosen. Under such circumstances, equitable estoppel establishes the agents' ability and entitlement to compel arbitration. See Armas v. Prudential Securities, Inc., 842 So.2d 210, 212 (Fla. 3d DCA 2003); Koechli.
REVERSED and REMANDED.
PLEUS, C.J., and TORPY, J., concur in result only.
NOTES
[1] See Fla. R.App. P. 9.130(a)(3)(C)(iv).
[2] See Jensen v. Rice, 809 So.2d 895 (Fla. 3d DCA 2002).
[3] See Vacation Beach, Inc. v. Charles Boyd Construction, Inc., 906 So.2d 374 (Fla. 5th DCA 2005); Micronair, Inc. v. City of Winter Haven, 800 So.2d 622 (Fla. 2d DCA 2001); Riverwalk Apartments, L.P. v. RTM General Contractors, Inc., 779 So.2d 537 (Fla. 2d DCA 2000); Florida Title Loans, Inc. v. Christie, 770 So.2d 750 (Fla. 1st DCA 2000) (arbitration clause unenforceable when one party unilaterally rescinds the contract and the other seeks to reinstate it); Party Yards, Inc. v. Templeton, 751 So.2d 121 (Fla. 5th DCA 2000).
[4] See e.g., Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So.2d 74, 77 (Fla. 3d DCA 1997). But see Rodriguez v. Tombrink Enterprises, Inc., 870 So.2d 117 (Fla. 2d DCA 2003); Mejia v. Jurich, 781 So.2d 1175 (Fla. 3d DCA 2001).
[5] It is impossible to ascertain from the opinion whether Florida or federal law was applied.
[6] See Orkin Exterminating Co. v. Petsch, 872 So.2d 259 (Fla. 2d DCA 2004); Stacy David, Inc. v. Consuegra, 845 So.2d 303 (Fla. 2d DCA 2003); Value Car Sales, Inc. v. Bouton, 608 So.2d 860 (Fla. 5th DCA 1992).
[7] Cf. Presidential Leasing, Inc. v. Krout, 896 So.2d 938 (Fla. 5th DCA 2005).
[8] See U.S. Const., amend. I and XIV; art. 1, section 21, Fla. Const.