**DIMATTINA HOLDINGS, LLC, Plaintiff,**

v.

**STERI-CLEAN, INC., et al., Defendants.**

**CASE NO. 16-CIV-61084-ALTONAGA/O'Sullivan**

United States District Court, S.D. Florida.

Signed July 18, 2016

Douglas Paul Solomon, Douglas Paul Solomon Law Office, John Joseph Shahady, Thomas R. Shahady, Kopelowitz Ostrow Ferguson Weiselberg Gilbert, Fort Lauderdale, FL, for Plaintiff.

Aaron Seth Blynn, Genovese Joblove & Battista, Miami, FL, for Defendants.

## ORDER

CECILIA M. ALTONAGA, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** came before the Court upon Steri-Clean, Inc. ("Steri-Clean") and Cory Chalmers's ("Chalmers," and collectively "Defendants[']") Motion to Compel Arbitration and Stay Litigation ... ("Motion") [ECF No. 6], filed on May 23, 2016. Plaintiff, DiMattina Holdings, LLC ("Plaintiff") filed a Response ... ("Response") [ECF No. 15] on June 14, 2016. On June 30, 2016, Defendants filed a Reply ... ("Reply") [ECF No. 19]. The Court has carefully considered the parties' written submissions, the record, and applicable law.

## I. BACKGROUND [1]

Steri-Clean is a "franchisor of a system for providing remediation for properties affected by hoarding." (Mot. 2). Steri-Clean is co-owned by Chalmers (*see id.*), who promotes himself and his business on a reality television show called "Hoarders." (*See* Compl. ¶ 7).

Plaintiff "formerly operated a startup franchised business that remediated property affected by hoarding." (*Id.* ¶ 2). As part of establishing the business, on January 5, 2015, Plaintiff entered into a "Steri-Clean Franchise Agreement" ("Franchise Agreement") with Steri-Clean. (*See id.* ¶ 9; *see also id.*, Ex. A ("Franchise Agreement")). Plaintiff started operating its business and, pursuant to the Franchise Agreement, made minimum monthly payments to Steri-Clean as royalties and marketing fees. (*See* Compl. ¶ 12). "After eleven months of diligent efforts at marketing and promotion but operating at a loss in every month but one, Plaintiff ceased its franchised business." (*Id.*).

In its Complaint, Plaintiff brings claims against Defendants for: (1) fraudulent inducement ("Count I"); (2) deceptive and unfair business practice under 16 C.F.R. section 436.1 and 15 U.S.C. section 45 (a)(1), as well as Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") ("Count II"); and (3) breach of the Franchise Agreement ("Count III"). (*See generally id.*). In Count I, Plaintiff alleges a number of "misrepresentations, false statements or omissions" Defendants made which induced it to enter the Franchise Agreement. (*Id.* ¶ 17). Regarding Count II, Plaintiff alleges Defendants' failure to provide accurate disclosures violates the Federal Trade Commission Act and the FDUTPA. (*See id.* ¶ 23). Finally, Plaintiff claims Steri-Clean has failed to meet its

---

1. The factual allegations in the Complaint ... ("Complaint") [ECF No. 1-1] are accepted as true. *See Northbrook Indem. Co. v. First Auto. Serv. Corp, N.M.,* No. 3:07–cv–683–J–32JRK, 2008 WL 3009899, at *1 n. 2 (M.D.Fla. Aug.1, 2008) (citing *Int'l Underwriters AG v. Triple I: Int'l Inv., Inc.,* 533 F.3d 1342, 1345–46 (11th Cir.2008)).

obligations under the Franchise Agreement. (*See id.* ¶ 25).

The Franchise Agreement contains an arbitration clause which states:

**11.8 Arbitration**

Any dispute arising out of or in connection with this agreement must be determined by binding arbitration by the AAA in San Bernardino County, California, under the rules for commercial arbitration of the AAA, as varied by the express provisions of this clause. ...

(Franchise Agreement 27). The arbitration clause is preceded by a dispute resolution provision, section 11.7, which provides: "if any dispute arises between [the parties], before beginning any legal action or arbitration to interpret or enforce this agreement, they will first attempt to negotiate a settlement and, if either party files a mediation proceeding, participate in the mediation." (*Id.* (alteration added)). Section 11.7 further specifies notice and timing requirements for those negotiations and mediations. (*See id.*). Additionally, section 11.10 provides: "Neither party may maintain an arbitration petition or action against the other party unless (a) the party makes reasonable good faith efforts to follow the negotiation and mediation procedures described above ...." (*Id.* (alterations added)).

Defendants seek to compel arbitration under the terms of the Franchise Agreement. (*See* Mot. 3). Plaintiff opposes arbitration arguing: (1) the conditions precedent to arbitration have not been met; (2) the fraudulent inducement and FDUTPA claims do not fall within the arbitration provision;[2] and (3) the claims against Chalmers do not fall within the arbitration provision. (*See* Resp. 7–11).

---

**2.** Plaintiff does not contest the arbitrability of Count III for breach of contract. (*See generally* Resp.; Reply 6).

## II. LEGAL STANDARD

■ "District courts consider three factors in reviewing a motion to compel arbitration: (1) Whether there is a valid, written agreement to arbitrate; (2) Whether there is an arbitrable issue; and (3) Whether the the right to arbitrate was waived." *Booth v. S. Wine & Spirits of Am., Inc.*, No. 14–22357–CIV, 2014 WL 5523123, at *2 (S.D.Fla. Oct. 31, 2014) (citations omitted).

■ "The Federal Arbitration Act ('FAA') establishes a general federal policy favoring arbitration."[3] *Mims v. Global Credit & Collection Corp.*, 803 F.Supp.2d 1349, 1352 (S.D.Fla.2011). "Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements ...." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (alteration added). "As a result of the well-established federal policy favoring arbitration, the burden is on the party opposing arbitration to prove to the court that arbitration is improper." *Kozma v. Hunter Scott Fin., L.L.C.*, No. 09–80502–CIV, 2010 WL 724498, at *2 (S.D.Fla. Feb. 25, 2010) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26–27, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)).

## III. ANALYSIS

Plaintiff challenges Defendant's Motion on four grounds: (1) the conditions precedent to arbitration were not fulfilled; (2) the fraudulent inducement claim is not arbitrable; (3) the FDUTPA claim is not arbitrable; and (4) the claims against Chalmers are not arbitrable. (*See* Resp. 7–11).

---

**3.** Defendants assert (*see* Mot. 4–5), and Plaintiff does not challenge (*see generally* Resp.), the arbitrability of the Franchise Agreement is governed by the Federal Arbitration Act, 9 U.S.C. section 1 *et seq.*

The Court addresses each argument in turn.

## A. Conditions Precedent to Arbitration

■ Plaintiff insists "where contracting parties condition an arbitration agreement upon the satisfaction of some condition precedent, the failure to satisfy the specified condition will preclude the parties from compelling arbitration and staying proceedings under the FAA." (Resp. 7 (citing *Kemiron Atl., Inc. v. Aguakem Int'l, Inc.*, 290 F.3d 1287, 1291 (11th Cir.2002) (per curiam)). Specifically, here, it contends Defendants failed to state compliance with the various conditions precedent to arbitration in the Franchise Agreement. (*See id.*).

*Kemiron* presented a factual scenario similar to the case at bar. The contract between the two parties required them to first mediate any disputes and then have one party give notice of its desire to arbitrate prior to the commencement of any arbitration. *See Kemiron*, 290 F.3d at 1290. The Eleventh Circuit held because "neither party requested mediation, the arbitration provision has not been activated and the FAA does not apply," affirming the district court's decision to deny Aguakem's petition to stay the action pending arbitration. *Id.* at 1291.

The problem with Plaintiff's reliance on *Kemiron*, however, is seven months after *Kemiron* was decided, the Supreme Court handed down *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). In *Howsam*, the Supreme Court distinguished disputes "about whether the parties are bound by a given arbitration clause"—which a judge should decide—from "'procedural' questions which grow out of the dispute"—which an arbitrator should decide. *Id.* at 84, 123 S.Ct. 588 (citations omitted). In doing so, the Court cited approvingly to the Revised Uniform Arbitration Act of 2000, noting the Act states "an arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled." *Id.* (internal quotation marks and citation omitted).

The Eleventh Circuit has since confirmed issues of procedural arbitrability, including conditions precedent to arbitration, are for arbitrators to decide. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1107, 1109 (11th Cir.2004) (stating courts resolve disputes over whether a particular claim should be resolved in court or arbitration, while arbitrators resolve whether the claim can be litigated at all due to, *e.g.*, statutes of limitations). Other courts, of course, have also acknowledged *Howsam* controls. *See, e.g., Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 565 n. 14 (4th Cir.2015) (stating *Kemiron*, among other cases, "predate, conflict with, or do not consider *Howsam* . . . and thus do not control here" (alteration added)); *Knowles v. Cmty. Loans of Am., Inc.*, No. 12–0464–WS–B, 2012 WL 5868622, at *4 (S.D.Ala. Nov. 20, 2012) ("*Kemiron* is not inconsistent with *Howsam* and *John Wiley*, because there is no indication either party argued that an arbitrator should decide the issue . . . . But even if *Kemiron* supported the proposition . . . , it could not carry the field against controlling Supreme Court precedent." (alterations added)).

Accordingly, whether Defendants "complied with the notice requirements under the Franchise Agreement prior to moving to compel arbitration" (Resp. 8), is a matter for an arbitrator to decide. *See BG Grp., PLC v. Republic of Arg.*, —— U.S. ——, 134 S.Ct. 1198, 1207, 188 L.Ed.2d 220 (2014) (finding arbitrator has the responsibility of interpreting and applying an arbitration provision concerning preconditions for arbitration because it was a "procedur-

al condition precedent" that "determines *when* the contractual duty to arbitrate arises, not *whether* there is a contractual duty to arbitrate at all" (emphasis in original; citation omitted)).

### B. Fraudulent Inducement

■ Plaintiff argues the Franchise Agreement contains an "arising out of" clause and therefore "there must be a direct relationship between the dispute and the performance of duties specified by the contract" for the claim to fall within the arbitration provision. (Resp. 9). Defendants disagree, insisting the arbitration provision is broader than Plaintiff asserts. (*See* Reply 6).

While Plaintiff is correct the arbitration provision in the Franchise Agreement contains "arising out of" language, the provision also reads "Any dispute ... in connection with this agreement must be determined by binding arbitration." (Franchise Agreement 27 (alteration added)). In *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204 (11th Cir.2011), the Eleventh Circuit noted the phrases "arising out of," "related to," and "connected with" are broad provisions, but not all encompassing. *See id.* at 1218–19. The *Doe* court explained both "arising out of" and "connected with" clauses require some direct relationship between the dispute and the contract. *See id.*

Plaintiff seizes on language in *Doe*, which states the term "arising out of" requires "an immediate, foreseeable result of the performance of contractual duties." *Id.* at 1218 (citations omitted); (*see also* Resp. 9). Plaintiff then argues the fraudulent inducement claim is not related to the performance of the Franchise Agreement. (*See* Resp. 9–10). In doing so, however, Plaintiff ignores the "in connection with" language altogether, which the Eleventh Circuit stated requires some direct connection but omitted reference to any requirement the claim be the immediate, foreseeable result of performance of the contract. *See Doe*, 657 F.3d at 1219. Courts, including the Supreme Court, have previously found fraudulent inducement claims arbitrable. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (stating claim for fraudulent inducement of a contract generally, as opposed to inducement an arbitration clause, is for the arbitrator to decide); *Gregory v. Electro–Mech. Corp.*, 83 F.3d 382, 384, 386 (11th Cir.1996) (finding tort claims, including fraudulent inducement, within the scope of the arbitration agreement); *Ben–Yishay v. Mastercraft Dev., LLC*, 553 F.Supp.2d 1360, 1368 (S.D.Fla.2008) (finding fraudulent inducement claim arbitrable because the claim related to the contract); *Beazer Homes Corp. v. Bailey*, 940 So.2d 453, 460 (Fla. 5th DCA 2006) (stating "arising out of" arbitration language "used in this case has been considered sufficient to require arbitration of fraud in the inducement claims by both state and federal courts, interpreting state and federal law").

■ Reading Plaintiff's Complaint, it is clear the fraudulent inducement claim is "in connection with" the Franchise Agreement. One of the elements of fraudulent inducement under Florida law is whether the false statements induced the plaintiff to enter into a contract. *See Bradley Factor, Inc. v. United States*, 86 F.Supp.2d 1140, 1146 (M.D.Fla.2000). Plaintiff alleges as much. (*See* Compl. ¶ 20; Resp. 9 (stating the fraudulent inducement claim concerns "the representations by Chalmers which induced the Plaintiff to enter the Agreement"). Its claim is therefore "in connection with" the Franchise Agreement, even assuming it does not "arise out of" the Agreement.

Plaintiff's cited cases further illustrate the point. In *Doe*, the Eleventh Circuit

found some claims arbitrable and others not, drawing a distinction between claims the plaintiff could have brought as a passenger on the cruise ship, which were not arbitrable, as opposed to claims she could only bring by virtue of her employment with the cruise ship, which were. *See* 657 F.3d at 1220–21. Applying this distinction, Plaintiff could not bring a fraudulent inducement claim but for it entering into the Franchise Agreement, and thus the claim is connected with the Agreement.[4]

### C. The FDUTPA

■ Plaintiff makes the same arguments regarding the FDUTPA claim as it did regarding fraudulent inducement. (*See* Resp. 9–10). For that reason, its arguments fail.

■ Plaintiff contends Defendants violated the FDUTPA by failing to provide accurate disclosures as required by 16 C.F.R. section 436.1. (*See* Resp. 10). Those disclosures relate to a franchisor's obligation to furnish a Franchise Disclosure Document to prospective franchisees. (*See id.*). To prevail on a FDUTPA claim, a plaintiff must establish: (1) a deceptive act or unfair practice; (2) causation; and (3) damages. *See Blair v. Wachovia Mortg. Corp.*, No. 5:11–cv–566–Oc–37TBS, 2012 WL 868878, at *3 (M.D.Fla. Mar. 14, 2012) (citations omitted). A plaintiff can demonstrate a deceptive or unfair practice by showing either: (1) a representation, omission, or practice likely to mislead the consumer; or (2) violation of any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition or unfair practices. *See id.* (citations omitted).

While Plaintiff appears to allege violation of a statute or rule which proscribes unfair practices, the Complaint is not entirely clear. (*See* Compl. ¶ 23). In any event, the claim is arbitrable because whether Defendants made representations or omissions likely to mislead Plaintiff or violated a statute or rule proscribing unfair practices, the causation leading to any damages springs from Plaintiff entering into the Franchise Agreement. That is, the rule on which Plaintiff relies specifically involves disclosures made in connection with someone obtaining a franchise, and therefore the claim is fairly read as being in connection with the Franchise Agreement. Moreover, any alleged damages are likely to emanate from Plaintiff's expenditures required by the Franchise Agreement or related to the franchise it acquired by virtue of entering into the Franchise Agreement. (*See, e.g.,* Compl. ¶¶ 12, 20); *cf. Southland Corp. v. Keating*, 465 U.S. 1, 15 n. 7, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (finding claims for violation of the disclosure requirements under the California Franchise Investment Law within the scope of the arbitration clause); *Beazer*, 940 So.2d at 461–62 (finding FDUTPA claim subject to arbitration).

### D. Claims against Chalmers

■ Finally, Plaintiff asserts since Chalmers is not a party to the arbitration agreement, he may not invoke the arbitration provision. (*See* Resp. 10–11). Defendants argue Plaintiff's claims against Chalmers rely on the same facts as the claims against Steri-Clean, and thus equitable es-

---

4. Similarly, in *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invests.*, 553 F.3d 1351 (11th Cir.2008), plaintiffs did not claim defendants fraudulently induced them to enter into the contract containing the arbitration provision. *See id.* at 1367. The *Hemispherx* court described the test as whether the "defendant could have been engaged in the allegedly tortious actions even if it had no contractual relationship with the plaintiff." *Id.* at 1367 (internal quotation marks and citation omitted). Here, there could be no cause of action without the Franchise Agreement. Additionally, *Hemispherx* discusses only an "arising out of" clause and not an "in connection with" term. *See generally id.*

toppel allows for arbitration of the claims against Chalmers. (*See* Reply 9).

■■■ According to Plaintiff, a "non-signatory to an agreement cannot compel arbitration pursuant to that agreement." (Resp. 10 (citing *Am. Personality Photos, LLC v. Mason*, 589 F.Supp.2d 1325 (S.D.Fla.2008))). *American Personality* applied New York law, which is inapplicable here. *See Am. Personality*, 589 F.Supp.2d at 1330. In Florida, "a non-signatory may compel a signatory to arbitration based on the doctrine of equitable estoppel." *Kolsky v. Jackson Square, LLC*, 28 So.3d 965, 969 (Fla. 3d DCA 2010). Both "Florida courts and the federal courts have recognized that non-signatories can compel arbitration by a signatory, when the proceeding concerns actions taken by the non-signatory/agent of a signatory." *Beazer*, 940 So.2d at 462; *see also Escobal v. Celebration Cruise Operator, Inc.*, 482 Fed.Appx. 475, 476 (11th Cir.2012) (per curiam).

■■■ A non-signatory to an arbitration agreement may compel arbitration when the allegations against him are inextricably intertwined with or mirror those against a signatory, or when the allegations are of interdependent and concerted misconduct between a non-signatory and a signatory. *See Bailey v. ERG Enters., LP*, 705 F.3d 1311, 1320 (11th Cir.2013); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.1999), *abrogated on other grounds, Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009). In *Beazer*, claims were asserted against Beazer and two of its employees. *See* 940 So.2d at 455. The plaintiffs argued the employees could not enforce the arbitration provision because they were not parties to the sales contracts. *See id.* at 462. The *Beazer* court held the employees could enforce the provision under equitable estoppel because there "is no allegation that [the employees] acted separately and independently from Beazer, and the allegations against them mirror the allegations against Beazer." *Id.* (alteration added).

Here, the claims against Chalmers and Steri-Clean are one and the same. Nowhere in the Complaint does Plaintiff allege Chalmers was operating separately and independently from Steri-Clean, and conversely, Plaintiff at no point alleges Steri-Clean acted through someone other than Chalmers. (*See generally* Compl.). In fact, Plaintiff repeatedly refers to their actions collectively. (*See, e.g., id.* ¶¶ 16, 19, 20, 23). Thus, since both Chalmers's and Steri-Clean's actions mirror each other and are inextricably intertwined, equitable estoppel applies. *See Beazer*, 940 So.2d at 462.[5]

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that the Motion [ECF No. 6] is **GRANTED** as follows:

1. Arbitration of Plaintiff's claims is compelled in accordance with the parties' Franchise Agreement and the FAA.

2. This case is **STAYED** pending arbitration.

---

5. Plaintiff asserts equitable estoppel should not apply because "the performance of this Agreement has no relevance to the Plaintiffs [sic] claims for Fraudulent Inducement and FDUPTA. There is no attempt in the Complaint to hold Chalmers to the terms of the contract." (Resp. 11). This ignores the other instance in which equitable estoppel applies and which Plaintiff acknowledges: where the allegations are of interdependent and concerted misconduct by a non-signatory and a signatory. (*See id.*). As explained, *supra*, Plaintiff alleges such interdependent and concerted misconduct.

3. The Clerk is directed to **administratively CLOSE** this case. All pending motions are **DENIED as moot.**

**DONE AND ORDERED** in Miami, Florida, this 18th day of July, 2016.